## DOUTHITT'S ADMINISTRATOR v. DOUTHITT.

1. The administrator presented his accounts and vouchers, against the estate of his intestate, for final settlement and allowance, to the Orphans' court: whereupon, the court ordered, that publication be made in some newspaper, &c. notifying all persons concerned, that on, &c. " said accounts will be acted on, and allowed, and the estate finally settled, and distribution thereof, made by the court"—Held, that the notice did not conform to the statute, but that it should have informed the persons interested, when the judge of the Orphans' court would report the account to the court for allowance, that they might file exceptions to the report, if dissatisfied with it.

2. It is not competent for the Orphans' court, to charge an administrator with notes and accounts in his hands, uncollected, as cash: the more especially, if neglect or mismanagement are not imputable to him.

THIS was a proceeding in the Orphans' court of Tuscaloosa. The first entry found in the transcript, was made on the 22d July, 1839, and is as follows: " This day, Herbert P. Douthitt, administrator of the estate of James Douthitt, deceased, came into court, and presented his accounts and vouchers against said estate, for allowance; which were stated and examined by the court. It is therefore ordered, by the court, that publication be made in some newspaper printed in Tuscaloosa, notifying all persons concerned, that on Monday the 16th day of September next, said accounts will be acted on and allowed, and the estate finally settled, and distribution thereof made by the court."

On the 16th day of September, the court " proceeded to make a final settlement of the estate of James Douthitt, deceased, with H. P. Douthitt, the administrator thereof, which is ordered by the court to be recorded."

Then follows a statement of the account of the plaintiff in error, in which the defendant is debited to the amount of several hundred dollars, and his distributive share reduced *pro tanto.* Much the larger portion of the estate remaining in the plaintiff's

Douthitt's Administrator v. Douthitt.

hands unadministered, consists of promissory notes, yet uncollected, and which so far as the record informs, may or may not be collected.

Lastly, comes the decree of the court, which recites " Whereas, publication has been made for forty days previous to this time, for the administrator and others to file their accounts and vouchers against said estate, and I have examined the same and audited the accounts, and reported them for a final hearing on the third Monday in September, it being a regular term of the Orphans' court of Tuscaloosa county," &c.

The decree states, that the plaintiff and defendant are the only heirs and distributees of the estate intestate; charges the plaintiff with the notes in his hands uncollected, *as cash;* and concludes as follows: "It is therefore ordered and decreed, that H. P. Douthitt, the administrator, pay to N. J. F. Douthitt, the sum of two thousand and ninety-four dollars and fifty-six cents, his distributive share of said estate; and that execution issue accordingly."

That the decree of the Orphans' court may be re-examined, a writ of error has been sued to this court.

Wm. Cochran, for the plaintiff.
Peck, for the defendant.

COLLIER, C. J.—It is insisted by the plaintiff that in this case, there is error in the record—*First.* Because the proceedings preparatory to the decree are irregular: *Second.* Because the decree is unauthorized by the matters appearing in it.

*First.* By the 21st section of the act of 1806, " concerning wills and testaments, the settlement of intestate's estates, and the duty of executors, administrators and guardians," (Aikin's Digest 182) the judge of the county court is authorized and required to take, receive and audit all accounts of executors, administrators," &c.; "and after examining and auditing such accounts, and causing them to be properly stated, to report the same for allowance to the next term of the Orphans' court, the executor, administrator," &c. giving at least forty days notice of his intention of having such account presented at said court, for allowance at said term." The notice is

to be given by written advertisement, either posted " in three of the most public places in the county," or published in some newspaper of the State according as the judge may direct, &c.

By the 1st section of an act of 1822, " concerning the judges of the county court," it is enacted, that " Hereafter, it shall be the duty of the judges of the county courts, in their respective counties, to give the notice now required by law to be given by executors, administrators, or guardians, of the term of the said court, at which any executor, administrator or guardian, may be required by said judge, to present for allowance, his settlement or account current, made as prescribed by law, in vacation." (Aik. Dig. 252.)

The order of the court, which notices the presentation of the accounts and vouchers of the administrator, remarks, that they " were stated and examined by the court," and then orders publication to be made, &c. " notifying all persons concerned, that on Monday, the 16th day of September next, said account will be acted on and allowed, and the estate finally settled, and distribution thereof made by the court." So far, there is a substantial compliance with the law; but the recital in the decree of the court, shows, that the terms in which the order required publication to be made, were not substantially followed; and that the publication actually made, called upon the administrator and others, to file their vouchers against the estate." In the decree, the judge also says in reference to the accounts and vouchers, " I have examined the same, and audited the accounts, and reported them for a final hearing, on the third Monday in September, it being a regular term of the Orphans' court of Tuscaloosa county, and the examination of the accounts was continued from day to day, up to the present time."

It is clear, that the publication which the decree informs us was made, is not such as the law contemplates. It calls upon the administrator and others to file their accounts and vouchers. The administrators should have done this previously, and the judge have examined, audited and stated them; that is, the judge should have caused the account of the administrator, so far as it

seems to be properly vouched, to be stated at length and in form, that the true condition of the estate might be seen, at a single view. This being done, the account would have been open to exception, in the same manner that the report of a master in chancery is; hence, the publication should give notice of the time, when the judge would report the account to the court for allowance. And upon publication being duly made, and no exception taken or allowed, the account as stated, should be allowed. (Aik. Dig. 182; sec. 27: Portis v. Creagh, executor; 4 Porter's Rep. 332.)

Whether the examination and statement of the administrator's accounts, were completed previous to the third Monday in September, is left very much in doubt by the recital in the decree; yet, as there are other errors apparent in the proceedings, we need not determine this point. (Legatees of Grayson v. Horn; 7 Porter's Rep. 270.)

It was clearly irregular, to charge the administrator with the notes remaining in his hands uncollected, and to authorize the collection of the defendant's portion of them, as if they had been converted by the plaintiff. Such a decree is not only opposed to the law; but in the absence of all proof of neglect or mismanagement, has not the semblance of justice to sustain it. A question precisely analogous, arose in Dobbs *et al.* v. The Distributees of Cockerham's estate; 2 Porter's Rep. 341. In that case a proceeding was instituted before the Orphans' court, to ascertain whether four slaves not included in the inventory, were the property of the intestate at the time of his death, and subject to distribution. The slaves were determined to constitute a part of the intestate's estate: whereupon, their value was assessed by a jury, and a decree rendered by the court, against the administrator for the same. In considering this point in the case, the court say, "We think the court did err, in charging the administrators with the value of the four slaves, as found by the jury, and in making distribution in cash. By the verdict, the negroes were found subject to distribution; and should have been divided among the distributees, or, if that could not be done, they

should have been ordered to be sold at public auction, under the first section of the act of 1820." This case is conclusive to show, that the notes making a part of the intestate's estate, should not have been regarded as *cash*. For the error in so considering them; as also, for the irregularity in the publication, the decree of the Orphans' court is reversed, and the case remanded.