## RHODES, EXECUTOR vs. TURNER AND WIFE.

1. The auditing and stating of an executor's account is a necessary preliminary to a final settlement; and in all cases, both before and since the passage of the act of 1843, the account *as stated*, whether by the executor or by the court, should lie over, and be presented for allowance at a subsequent term, of which at least forty days' notice should be given.

2. A final decree of settlement should be definitive as to all the liabilities of the executor to the estate, and should award distribution of the entire fund in his hands, having all the distributees before it.

3. A decree rendered by the Orphans' Court, upon the application of an executor, by which an amount is ascertained to be in his hands, a portion of which he is ordered to pay over to those entitled to it, and to retain the balance until the further order of the court, is not a final decree; but it may well be regarded as an interlocutory decree, and, being *prima facie* correct, unless impeached for errors or mistakes, may be made the basis of a final decree.

4. At the common law, the lapse of seventeen years would not be sufficient to raise the presumption of payment by an executor, of the amount ascertained to be due to the legatees upon a settlement of his testator's estate; and the statutes of this State fix no period, as a limitation to proceedings in the Orphans' Court against an executor or administrator, to compel a final settlement. The statute prescribing six years, as a limitation to actions at law for an account, does not apply; for the court has the administration of the estate in progress, and the proceedings before it must be considered as *in fieri*, until the final settlement and discharge of the executor.

5. But, according to the principles of the common law, a final judgment would be presumed to have been paid after the expiration of twenty years; and if the parties allow this period to elapse without taking any steps to compel a settlement from an executor or administrator, the presumption of payment arises in his favor; and this period would date from the time when he might have been called to a settlement.

ERROR to the Court of Probate of Mobile.

WM. G. JONES, for plaintiff in error:

1. In 1831, Rhodes made a full settlement of his accounts as executor; it was so considered and acted on by the parties and the court. In 1832, at the instance of the defendant in error, Emily, by her guardian, Arrington, Rhodes is ordered to pay to the guardian, Arrington, the amount ascertained in his hands.

In 1833, Rhodes resigns his executorship, stating he has made a final settlement. This is accepted by the court, and an administrator *de bonis non* appointed. Rhodes, it is said,

moved from the State; near seventeen years elapse, and then, without any notice to him, this *ex parte* decree is made against him. The bare statement of the facts and dates, is enough to show the error and iniquity of the proceeding.

2. The Probate Court had no jurisdiction of the application of Turner and his wife. Rhodes had, seventeen years before, settled his accounts and resigned his office, and moved off from the State, and an administrator *de bonis non* been appointed.

3. It is an old and stale demand. After the settlement and decree nothing was done for more than eighteen years. This was more than sufficient to bar any action of debt, assumpsit, covenant, or account, by the statute of limitations. By analogy, and by the principles of equity against stale demands, no court of law or equity would support this claim. 2 Story's Eq. 981, § 1520. If the Probate Court be considered as acting as a court of law in this matter, the statute of limitations would apply to the case; if as acting as a court of equity, the laches of the plaintiffs and the staleness of the demand would be equally fatal to it. For the manner in which our courts have adopted and applied this equitable doctrine, see particularly Wood v. Wood, 3 Ala. 756.

It appears from the record, that the plaintiff, Emily, is a legatee of the deceased; there is nothing to show that she has been always under a disability to sue; she might have sued at law for her legacy, but she is barred at law by the limitation of six years, and the remedy being concurrent in law and equity, the same lapse of time bars her remedy in equity. Wood v. Wood, 3 Ala. 762.

4. This proceeding is probably founded on the statute of 1843, Clay's Dig. 230, § 47. If so, it is not in conformity with the provisions of that act, and the proceedings being *ex parte*, against a man never served with notice or brought into court by process, should be strictly according to law. The court could not proceed until it was shown that Rhodes had removed from the State. There was no other showing of this than the statement in the petition, which one of the petitioners verified, not positively, but by saying he believed it to be true. It is submitted that this should have been shown by other evidence, or, at all events, a positive oath of

the petitioner. The act only authorizes this proceeding where the executor has removed without having settled his accounts. Here Rhodes had settled his accounts. The petitioners themselves admit it, by claiming the specific sum ascertained by the settlement, and also by the court. The statute directs, that on the failure of the executor to appear, &c., the judge shall state an account, charging him, &c. Here the judge stated no account. He authorized the petitioners to state an account; and the account stated, instead of being an account of his administration, as the statute requires, simply charges him with one-half of a specific sum, said to have been ascertained to be in his hands, by a former decree.

After stating the account, the statute requires the judge to proceed as now required by law. The law required forty days' notice. The account was stated 10th February, 1851, and the final decree made on it the 12th February, 1851, only two days afterwards, and without any notice. This was contrary to law. Under the proviso in § 47, Clay's Dig. 130, the executor had a right to these forty days' notice, to object to the account as stated, or to file an account of his own.

It also appears that Mrs. Arrington was an heir and legatee of the decedent. No decree could be made until she, if living, or her representative, if dead, was before the court. Crothers v. Ross, 17 Ala. 816, and cases there cited.

GEO. N. STEWART, contra:

1. There were funds in the executor's hands: Has the distributive share of Emily Howell ever been paid? If it has, it could readily be proved by the production of a receipt. It devolves on Rhodes to prove payment. All payments must be strictly proved. But there is no evidence of payment. The assertion in the written resignation, that he had paid over all funds to S. Acre, attorney for Arrington, is no evidence. It is but his assertion, but not admitted by the court, or by any one. The court accepted the resignation, but nothing more, and appointed another administrator. The legacy, then, never was paid, and no payment is shown or proved.

2. It is next said that it is a stale demand, barred by limitations, or something of that kind. To this, we answer: 1. A

legacy is never barred by limitation. 2. The legatee was an infant, and could make no claim. 3. The defendant left the State, wholly neglecting his duty to account, and was a nonresident. 4. The debt appears of record, on his own showing recorded, and the record shows his default and neglect of duty from beginning to end, and he resigned to avoid being removed. 5. Limitation is not pleaded.

3. It is said the account should have been published forty days after being stated. This has no application to a case like this. That rule applies to accounts presented by the administrator, and is to give to the creditors and legatees an opportunity to contest them. The reason fails here. The decree here is predicated on the showing of the administrator himself, found on record. He makes default, and the record itself merely is confirmed against him. He cannot object to this.

4. It is said the decree is partial only, and not final, being for the share of one legatee only. We do not know if the other has been paid or not. The statute contemplates a separate judgment and execution in favor of each legatee. Besides, if the objection be a good one, the writ of error will not lie, for it can only lie on a final judgment. Quere, does the writ of error lie in this case?

5. As to the interest, our law is, that interest is chargable of course; unless the administrator purges himself of it by his own oath. Clay's Digest, 198, § 28. Here he contests and denies the right; pretends payment falsely. Interest goes of couse. Legacies bear interest.

The defendant was chargeable, as we say, with a much larger amount, if we went into the account. But so as to avoid delay and controversy, we have taken a decree, only for what appeared of record to be due on his own showing, supposing there could be no objection on his part to this. Due proof was made before the judge of the Orphans's Court, of all the facts necessary to show the right to the decree rendered. The proceeding was under the statute. Clay's Dig. 230, § 47.

CHILTON, J.—The plaintiff in error having, as executor, taken upon himself the execution of the will of William H.

Howell, deceased, on the 8th April, 1831, filed his accounts and vouchers in the Orphans' Court of Mobile, which had granted him letters testamentary, for a settlement of the estate. A day was appointed and publication duly ordered, for all parties interested to appear and show cause why the account should not be allowed.

On the day thus set apart, viz: on the 30th May, 1831, it was ordered, that the executor "pay all the claims which are marked passed on his exhibit, and also, those therein marked as suspended, if proved in sixty days, which time is allowed for proving said suspended claims;" and it was ordered, "that all other claims on said exhibit be rejected," and that "the said executor pay over to those legally authorized to receive the same, the sum of two hundred and thirty-one $\frac{53}{100}$ dollars, that being the balance of said assets admitted in said exhibit, after paying the privileged and ordinary debts as allowed by this court."

Afterwards, on the 26th day of April, 1832, a citation was issued to the executor, requiring him to appear before the county judge on the 28th of the same month, to show cause why he should not be decreed by said court to pay over to Joseph Arrington, husband of Lucy M., (late Lucy M. Howell,) and guardian, in right of his said wife, to Emily Howell, the said Lucy and Emily being legatees under the will of William H. Howell, deceased, the moneys in his hands as executor of said will, remaining after final settlement of the estate of said Howell.

The executor appeared in obedience to this citation, and it was ordered, "that he pay over to said Joseph Arrington, the sum of two hundred and thirty-one $\frac{58}{100}$ dollars, and also the sum of ninety-three dollars, that being the amount of ·suspended claims not proved within the time heretofore limited by the order of this court, deducting the sum of one hundred and ninety-one $\frac{14}{100}$ dollars, which said executor claims the right to retain in his hands, and which is to remain subject to the further order of this court."

Nothing further appears to have been done, until the 27th August, 1833, when Wm. J. Bettis applied to the Orphans' Court, to have Rhodes, the executor, removed, and himself appointed as administrator *cum test. annexo*, &c. Citation was

accordingly issued, returnable on the 16th September, 1833.

On the 8th September, 1833, Rhodes made a written resignation, which he sent to the Orphans' Court judge, in which he stated, that he "had long since made a settlement of said estate, and paid over all funds to Samuel Acre, Esq., of Mobile, attorney for Doctor Arrington," &c.

This resignation was filed on the 17th October, 1833, and "accepted" by the court, and, thereupon, Bettis was appointed administrator.

Here the matter rested until the 1st October, 1850, a period of seventeen years, lacking a few days, when application was made by Samuel M. Turner, who had married Emily Howell, for citation requiring Rhodes to come forward and make final settlement; setting forth the fact of his residence beyond the State, and praying publication. An order for settlement and publication was accordingly granted.

On the 13th January, 1851, Rhodes not appearing, it was ordered that Turner and wife state an account *ex parte*, which was done, charging the executor with one-half of the amount of money remaining in his hands, as per settlement with said court, on the 28th day of April, 1832, $162.26, which, with interest from that period until the 10th February, 1851, made the sum of $406.27 ; and the court proceeded to render final judgment against Rhodes for this sum.

To reverse this judgment, the executor brings the case to this court, and insists, 1. That the length of time was a bar to any proceeding against him. 2. That, if it was not, the executor had no notice, as required by the statute, as to when the account should be allowed. 3. That there was a final settlement, which was conclusive upon the parties, and consequently no subsequent proceedings for another settlement could be entertained; and, 4. That the judgment should have been in favor of all the distributees, so as to make the settlement final, and not in favor of one, leaving the other to bring the executor to another settlement.

1. The act of 1843, Clay's Dig. 230, § 47, authorizes the Probate Court, when an executor or administrator, &c., removes beyond the jurisdiction of the county granting letters testamentary, or of administration, upon the application of any one interested, to cause notice to be given, by advertise-

ment in some newspaper published in this State, requiring such executor, &c., to file his accounts and vouchers for settlement at a regular term of said court, to be holden not less than three months from the date of said notice; and if the executor, &c., fail to appear and state his accounts, &c., the judge may state the account *ex parte*, charging the executor with such amounts as shall appear, upon the best information, to have come into his hands, and proceed to settle and decree upon the same, "as now required by law." The law to which reference is made in this act, is doubtless the act of 1806, which required the judge of the Orphans' Court, when the executor presented his account, &c., for final settlement, to audit said account, and after causing it to be properly stated, to report it to the next term for final settlement; the executor being required to give at least forty days' notice of his intention of having such account presented for allowance at such term, by posting up notice thereof in three of the most public places in the county, or advertising three weeks in some newspaper, &c. Aik. Dig. 182, § 27.

This statute was so amended by the act of 1822, as to require the judge, instead of the executor, &c., to cause notice to be published, and authorizing him to render judgment for the printer's fees. Aik. Dig. 252, § 33.

We think, it is very apparent from the several statutes then in existence, that the account, whether stated by the executor, or by the court in his absence, should lie over, and be presented for allowance at a subsequent term, and that at least forty days' notice should be given, of having said account allowed at the term to which it is referred. This notice, it has been several times decided, was required, that the parties interested should have an opportunity afforded them of examining and contesting the account. Legatees of Horn v. Grayson, 7 Porter, 270; Douthit v. Douthit, 1 Ala. 594; Parks v. Stonum, 8 ib. 752. The stating the account is a necessary preliminary to the final settlement, but after it is stated, it is open to exception until allowed on final settlement. *Ibid.*; see, also, Hall v. Wilson's Heirs, 14 Ala. 295, 301.

Indeed, the act of 1843, under which the petitioners proceeded, clearly indicates, that the executor shall have an

opportunity of contesting the account, as stated, by allowing him to come in at any time before the final decree, and by paying the cost, and filing his accounts and vouchers, to have the *ex parte* proceedings set aside, in which event the court is required to audit and state the account for allowance, as required by the previous law.

2. In this case, instead of stating the account between the estate and the executor, so as to pronounce a final decree concluding all the parties, and awarding to each legatee his share, the court allowed one of the alleged legatees to make out a partial account, embracing only one-half of the supposed balance in the hands of the executor, and leaving the remainder undisposed of by the decree. A final decree, as the term imports, should be definitive as to all the liabilities of the executor to the estate, and should also award the distribution of the fund, having all the distributees before it. Boyett v. Kerr, 7 Ala. 9; Crothers, Adm'r. v. The Heirs of Ross, 17 Ala. 816, 822; Clay's Dig. 304.

Again: this decree was rendered two days after the account was stated, and, of course, without the forty days' notice required by the act we have cited. This was clearly erroneous.

As the case must go back, it is necessary that we notice the other points which will likely arise upon another trial.

3. The record fails to show a decree finally settling this estate. True, an amount is ascertained to be in the executor's hands, upon his application for a settlement, and he is ordered to pay over a portion of the fund, but the balance is ordered to be retained by him until the further order of the court. We think the Probate Judge may properly regard this as an interlocutory decree, and being *prima facie* evidence of its correctness, unless impeached for errors or mistakes, the judge may well make this accounting the basis of his final decree, as he appears to have done.

4. The time which elapsed in this case was not sufficient, at the common law, to have raised the presumption of payment by the executor, of the amount due the legatees upon a settlement of the estate, and our statutes fix no period as a limitation to proceedings against an executor or administrator in the Orphans' Court, to compel him to come to a final

15

settlement. We do not think that the six years' statute, prescribed as the limitation to actions at law for an account, and which, by analogy, the Chancery Court adopts, can apply; for the court here has the administration of the estate in progress, and the proceedings before it must be considered as *in fieri* until the final settlement and discharge of the executor. It must not, however, be understood that there is no limit within which a party must be required to invoke the aid of the court, in compelling the administrator or executor to a settlement.

If a final judgment had been rendered, according to the principles of the common law, it would be presumed to have been paid after the expiration of twenty years; and if the parties allow this period to elapse without taking any steps to compel a settlement, we think the presumption of payment arises, and the executor or administrator should be exempted from the necessity of hunting up evidence to prove accounts and vouchers which ordinarily enter into such settlements, and which, after such a lapse of time, it would perhaps, in most cases, be impossible for him to obtain. This period of twenty years, we apprehend, would date from the time when the administrator or executor might have been called to a final settlement of the estate.

Let the decree be reversed, and the cause remanded.