# Harrison *et al. v.* Heflin, Adm'r, *et al.*

*Bill in Equity for Settlement and Distribution of Decedent's Estate.*

1. *Limitation to proceedings against administrator and sureties by heirs and legatees, prior to Code of 1852.*—Prior to the Code of 1852, there was no statute of limitations operating on a demand of distributees and legatees against an administrator and sureties upon his official bond ; and causes of action accruing prior to its adoption, were not affected by its provisions, but remained subject to former statutes,

[Harrison et al. v. Heflin, Adm'r, et al.]

2. *Same.*—If, however, a legatee or distributee failed for twenty years, after proceedings could have been instituted in the probate court, to compel a settlement of the administration and distribution of assets, and there was no recognition or admission, within that period, of the administration as a continuing, subsisting and undischarged trust, a presumption of settlement arose, operating as a positive bar to such proceedings ; and if resort was had to equity, the presumption was of equal force, and the rules of that court against stale demands were also applied.

3. *Same; from what time bar computed.*—Proceedings by the administrator in the probate court, in the legal and regular course of a pending administration, are a recognition of it as a continuing and subsisting trust, and binding on the surety, preventing any bar attaching from the lapse of time ; but the death of the administrator is a termination of the administration and its trusts, and from that period of time commenced operating as a bar to any proceedings by distributees against the surety.

4. *Same; admissions by personal representative of principal, effect of on rights of surety.*—No such relation or privity exists between the surety and the personal representative of the principal, as makes the admissions of the latter, or his recognition of the administration as a subsisting trust, binding upon or evidence against the surety.

5. *Presumption of settlement after lapse of twenty years.*—After the lapse of twenty years a claim of distributees against a surety upon an administration bond, in the absence of all recognition or admission of it as a subsisting claim, during that period, is conclusively presumed to have been settled or discharged.

6. *Same; what period not excluded in computing time.*—The period between the 11th day of January, 1861, and the 21st day of September, 1865, during which the statutes of limitation were suspended. can not be excluded in computing the twenty years, from the lapse of which, in the absence of other evidence, arises the presumption of payment and satisfaction of a demand upon a bond.

APPEAL from Chancery Court of Dallas.

Heard before Hon. CHARLES TURNER.

This is an appeal from a decree sustaining a demurrer of John T. Heflin, as administrator of the estate of Edward Gantt, deceased, to the bill of complainant filed against him in the court below by Richard K. Harrison and others.

The case made by the bill, so far as necessary to a proper understanding of the matters involved on demurrer, is as follows:

On the first day of March, 1843, Richard B. Harrison died intestate, in the county of Dallas, unmarried and without issue. He left a large estate in lands and personal property. His only heirs at law were three brothers, John, James and Kirkland, and three sisters and the heirs at law of two of his brothers who died before said Richard. On the 27th day of March, 1843, Kirkland Harrison qualified as administrator of said Richard B., giving bond, with E. W. Sanders and Edward Gantt as sureties, and afterwards, on the 4th day of May, 1843, on requisition of the probate court of Dallas, in which the administration was pending, said Kirkland executed an additional administration bond, with said Sanders, Gantt and one Babcock as sureties, which was duly approved. Kirkland Harrison took upon himself the management and con-

[Harrison et al. v. Heflin, Adm'r, et al.]

trol of the estate, obtained orders for sale of property, brought suit to collect debts due it, and continued to act as administrator until he died, about the 1st day of January, 1850, never having made any settlement of his administration. The bill charges that he wasted and misapplied the assets, and committed devastavits not necessary to be here noticed.

On the 1st day of May, 1850, letters of administration *de bonis non* upon the estate of the said Richard B. were granted to Francis A. Sanders, who gave bond with approved sureties, and entered upon the discharge of the administration. On the 2d of February, 1850, letters of administration on the estate of said Kirkland were granted to said Francis A. Sanders and Margaret A. Harrison, widow of said Kirtland, who gave bond with approved sureties, and entered upon the discharge of their duties. It is averred that said Sanders and Margaret, ever since their appointment, have been and still are administrator and administratrix of the estate of said Kirkland, and as such justly chargeable with large amounts of assets which came into their hands, and that they have never made any settlement. It is averred that the said Francis Sanders is also the administrator *de bonis non* of Richard B., and continued to be such until removed by order of the probate court, on the 22d day of February, 1869, when one Nelson was appointed administrator *de bonis non* of said estate; that he committed various devastavits, and never made any settlement of his administration. It is further averred, that on the 12th day of May, 1852, said Francis Sanders and Margaret Harrison, as administrators of said Kirkland, filed in the probate court their accounts for the settlement of said Kirkland's administration upon the estate of said Richard B. · This account showed a large balance due from said Kirkland to the estate of said Richard B. This account, however, was lost from the files and never passed on by the court. Afterwards said Francis Sanders and Margaret Harrison, on the 13th of February, 1859, made a final settlement of the administration of said Kirkland upon the estate of said Richard B. Harrison, whereby it was ascertained and adjudged that the estate of said Kirkland was indebted to the estate of said Richard B. for over one hundred thousand dollars, and that court thereon rendered proper judgments in favor of the distributees of said Richard B. The administrators of said Kirkland appealed to the supreme court, which, in the year 1864, reversed the decree of the probate court and remanded the cause for further proceedings. Afterwards the accounts filed disappeared, or were abstracted from the files, and no settlement has been had

[Harrison et al. v. Heflin, Adm'r, et al.]

therein, although proceedings to compel a settlement were still pending there undetermined.

Sanders and Babcock, two of the sureties on said Kirkland's bond as the administrator of said Richard B., died many years before the filing of this bill, (which was filed on the 23d day of July, 1873,) wholly insolvent. It is further alleged that said "Edward Gantt, the other surety thereon, died about three years ago, in the county of Talladega, in this State, having first made and published a last will and testament in writing; that the probate of said will was immediately contested by some of his heirs, and the contest prosecuted with great perseverance in the probate court and supreme court, with varying results, until said will was finally established about twelve months ago; that by reason thereof no general executor or administrator of said estate was or could be appointed until the contest was ended and the will admitted to probate; that soon after the probate of said will letters of administration, with the will annexed, upon said estate were duly granted by the probate court of Talladega, in this State, to John T. Heflin, who qualified," &c., receiving real and personal property to the amount of fifty thousand dollars.

It was further alleged, that all the sureties on the bond of said Francis Sanders and Margaret Harrison had departed this life many years ago wholly insolvent, except one Craig, who was insolvent, and since the making of the bond had been discharged in bankruptcy. Said Francis A. Sanders is also insolvent, and said Margaret Harrison is a non-resident, having no property in this State. Of the sureties upon Sanders' bond as the administrator *de bonis non* of Richard B., one died wholly insolvent many years before the filing of the bill, and the other is a non-resident. It was also alleged, that the brothers and sisters of said Richard B., together with the heirs of his two deceased brothers, who at the time of his death were his only heirs at law and distributees, " all died upwards of twenty years ago, and their several estates have long since been settled." Complainants are the children of Willoughby and James Harrison, brothers of said Richard B. It is averred that the children and heirs at law of the other brothers and sisters of said Richard B. left numerous descendants, residing in different States and localities, and that on account of the changes by births, deaths, intermarriages and removals, it is impossible for complainants to state their names or residence. The purpose of the bill is to settle and distribute the estate of said Richard B. Harrison, and also to charge the sureties of Kirkland Harrison and the sureties of said Francis A. Sanders with what-

[Harrison et al. v. Heflin, Adm'r, et al.]

ever balances may be ascertained against them, respectively, on account of said administration.

Heflin, as administrator of Gantt, demurred to the bill on the following grounds: 1st. The claim asserted against defendant is a stale demand. 2d. Plaintiff's cause of action accrued to them more than twenty years prior to the commencement of the suit. 3. That it appeared from the bill that the claim was barred by the statute of limitations of six and of ten years.

The chancellor being of opinion that the claim against the estate of Gantt was barred by the statute of limitations, sustained the demurrer on that ground, but overruled it on the others. This decree is now assigned as error.

BROOKS, HARALSON & ROY, for appellant.

PETTUS, DAWSON & TILLMAN, contra.

BRICKELL, C. J.—The correctness of the decree sustaining the demurrer of the appellee, Heflin, is the only matter to be considered on this appeal. The demurrer was sustained because it was supposed the case made by the bill was within and barred by the clause of subdivision 6, § 2901 of the Revised Code, which declares that actions against the sureties of executors, administrators or guardians, for any misfeasance or malfeasance whatever of their principal, must be brought within six years, the time to be computed from the act done or omitted, which fixed the liability of the surety. This provision was first introduced into our statutes by the Code of 1852. It was an extension to the sureties of an executor or administrator or guardian, of the statute of 1832, (Clay's Dig. 329, § 90,) limiting actions against the sureties of a public officer. The provisions of the Code, limiting suits, apply only to causes of action accruing after the 17th day of January, 1853, the day when it became operative. Causes of action which had previously accrued, are subject to the former statutes of limitation, and are unaffected by the limitations the Code prescribes.—R. C. § 2926; *Martin v. Martin*, 35 Ala. 560; *Bedell v. Smith*, 37 Ala. 625. The cause of action averred in the bill, had accrued, and was fully the subject of suit before the Code became operative. The chancellor was, therefore, in error in applying to it the clause of the Code to which we have referred. The error is not, however, cause of reversal, if the demand of the complainants is within the bar of the statutes of force at the adoption of the Code; or if barred by the presumptions arising from the lapse of time; or if it is a stale demand, offensive to the pecu-

liar rules of a court of equity. The causes of demurrer assigned, are broad enough to embrace either defense.

The statutes of limitation prior to the Code, were in terms directed only against legal remedies. Particular forms of action which must have been pursued—particular injuries for which redress must have been sought—particular rights which must have been asserted—particular contracts, on which remedies must have been prosecuted at law within a prescribed period, were designated. The period varied according to the character of the right or injury, or the form of action to be pursued. The bond of an administrator was not subject to any bar the statute created. It was never, in the first instance, the subject of a suit at law· against either principal or surety. Before it could become the subject of such suit, the liability of the administrator must have been fixed by an independent suit at law against him in his representative capacity, or by decree of the court of probate, or of a court of chancery. The liability to legatees or distributees, was most often ascertained by a settlement of the administration and a decree in the court of probate. The settlement and decree, in the absence of fraud, was conclusive on the sureties, and if on the decree execution issued against the principal was returned unsatisfied, an execution could issue against the sureties. The proceedings in the court of probate were not embraced in any statute of limitations—they were statutory and bore no resemblance to suits at law.—*Rhodes v. Turner*, 21 Ala. 210, *Harrison v. Harrison*, 39 Ala. 499. The jurisdiction conferred on the court of probate to compel a settlement of the administration, and to render decrees against the executor or administrator in favor of legatees or distributees, did not divest the court of equity of its original jurisdiction over administrations, and in that court the legatees or distributees could maintain suits for an account of the assets, and a recovery of their legacies and distributive shares; and in such suits could join the principal and sureties in the administration bond. The remedy in equity was not within the terms of the statute of limitations, nor concurrent with or analogous to any legal remedy barred by the statute. There was, of consequence, no statute of limitations prior to the Code, operating on the demand of distributees or legatees against an administrator and the sureties on his bond.—*Harrison v. Harrison*, 39 Ala. 499; *Rhodes v. Turner*, 21 Ala. 210; *Bedell v. Smith*, 37 Ala. 625. It did not result, however, that there was no limit within which a legatee or distributee was required to invoke the aid of a court of probate, or of equity, to compel a settlement of the administration and a distribution of the assets. If twenty

years were allowed to elapse from the time at which proceedings for that purpose could have been instituted in the court of probate, without the commencement of such proceedings, and there was no recognition or admission within that period of the administration, as a continuing, subsisting, unexecuted and undischarged trust, a presumption of settlement arose, operating as a positive bar to such proceedings—*Rhodes v. Turner*, 21 Ala. 210; *Barnett v. Tarrance*, 23 Ala. 463; *Austin v. Jordan*, 35 Ala. 642; *McCartney v. Bone*, 40 Ala. 533. If resort was had to a court of equity, the presumption was of equal force, and the rules of that court against stale demands were also applied.—*Johnson v. Johnson*, 5 Ala. 90; *Blackwell v. Blackwell*, 33 Ala. 57; *High v. Worley*, 40 Ala. 171; *Ragland v. Morton*, 41 Ala. 344.

The averments of the bill show the administration was, by the administrator, recognized as a continuing, subsisting trust, from its grant in 1843 to his death, about the first of January, 1850. This recognition was by proceedings in the court of probate in the regular and legal course of a pending administration, and was binding on the surety, preventing any bar, arising from the lapse of time, attaching. The death of the administrator was, however, a legal termination of the administration and its trusts, and from that period of time commenced operating as a bar to any proceedings by the distributees against the surety. The only remedy against him which could have been pursued, was in equity. The personal representative of his principal, the deceased administrator, could have been compelled to a settlement of his intestate's administration in the court of probate, and a decree obtained against him for any *devastavit* the intestate may have committed, and for distribution. Such settlement and decree would not have been binding on the surety, nor could it have been made the foundation of a suit on the bond against him.—*Gray v. Jenkins*, 24 Ala. 516. Between him and the personal representative of his principal, there was no relation of privity which could render the settlement matter of evidence against him. The privity rendering a settlement made by the principal conclusive on him was personal to the principal, terminating with his death, and his administration. A judgment or a decree ascertaining and fixing the liability of the principal, being indispensable to a suit at law on the bond, against the surety, and there being no mode of obtaining such judgment or decree, after the death of the principal, which would be binding on or evidence against him, it follows the only remedy against him was in equity.

More than twenty-three years elapsed after the death of

the principal and the termination of the administration, before the commencement of this suit. No recognition or admission by the surety, within that period, of any liability existing against him or against his principal is averred. Admissions of liability, or a recognition of the administration as unsettled, may be shown to have been made by the personal representatives of the principal, which would prevent the presumption of settlement from arising, or the imputation of staleness to a demand against them for an account and distribution. Such recognition or admissions are of no avail against the surety. Between him and the personal representatives no privity, or community of interest existed, which could affect him by their acts or admissions.—Angell on Lim. §§ 251-2-3. The case as presented is, then, a demand originating in and created by the bond, existing and capable of enforcement for more than twenty years. The authorities to which we have referred, require the presumption of settlement, of satisfaction, to be interposed as a positive bar, unless we exclude from the computation of the twenty years the period elapsing between the 11th January, 1861, and the 21st September, 1865, excluded in the computation of the bar of the statute of limitations.

At common law, as it prevails in this country, debts due by specialty or judgment, or mortgage, or by any species of contract, if unclaimed and without recognition for twenty years, in the absence of countervailing evidence, are presumed to have been satisfied.—1 Green. Ev. § 39; Matthews Pres. Ev. 378; 1 Phill. Ev. 676, (n. 193). Originally, in the absence of a statute of limitations, a debt was, at common law, presumed to continue until its satisfaction or extinguishment was shown. However long it may have lain dormant, and in whatever of obscurity and uncertainty, its origin from the lapse of time may have been involved, evidence of its existence at any particular time, carried with it the presumption of continuance, and cast on the debtor the burden of proving its satisfaction or extinguishment. In courts of equity a different principle prevailed, and acting, as is said, "upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands," they refused to interfere when there had been "gross laches in prosecuting rights, or long and unreasonable acquiescence in the assertion of adverse rights."—2 Story's Eq. § 1520. Against bonds, on which demand had not been made for twenty years, and upon which the obligees were proceeding at law, these courts were accustomed to grant relief on the presumption of their payment or satisfaction. Sir Matthew Hale was the first judge to adopt and apply the presumption at law, and he was followed

by Lord Holt. Since, it has prevailed in law and in equity. Matthews Pres. Er. 370. The character of the presumption, whether it is a mere inference of fact, falling exclusively within the province of a jury, or whether it is a presumption of law and fact, enduring until disproved, is a question on which the authorities are not harmonious. It has often been held at law, that it could be repelled by any evidence having a tendency to satisfy the jury the debt was due. The debtor's poverty and consequent inability to pay, his absence or that of the creditor beyond sea, or without the jurisdiction in which the suit was pending, have been admitted as evidence to avoid the presumption.—1 Phill. Ev. 676, (n 193) ; Matthews Pres. Ev. 376–80. The period of the revolutionary war was not computed as part of the time which would authorize the presumption to be made.—*Jackson v. Pierce*, 10 Johns. 417; *Penrose v. King*, 1 Yeates, 344; *Brewton v. Cannon*, 1 Bay, 475. These authorities all proceed on the ground, that the lapse of time is a mere circumstance on which to found the presumption of payment. It may also be remarked of them, that when the decisions were made, the statute of limitations and defenses founded on the lapse of time, were regarded in an unfavorable light, and were by the admission of loose declarations, slight or indefinite acknowledgments, deprived in a great measure of all force. The courts have since ceased to look with disfavor on such defenses, and upon reasoning which is equally applicable to the indulgence of the presumption, have restored vitality to the statutes of limitation.—*Bell v. Morrison*, 1 Pet. 371. Other authorities than those cited, which have been followed by this court, regard the lapse of twenty years not as a mere circumstance from which the presumption of payment or extinguishment may be drawn; not the presumption as a mere inference of fact, lying exclusively in the province of the jury; but as a presumption of law and fact, creating *prima facie*, a positive bar.—*McCartney v. Bone*, 40 Ala. 533; *High v. Worley*, Ib. 171; *Milton v. Haden*, 32 Ala. 30; *McArthur v. Carrie*, Ib. 75. In *Gratwick v. Simpson*, 2 Atk. 144, it is said, "The judges have laid it down now as an invariable rule, that if there be no demand for money due upon a bond for twenty years, that they will direct a jury to find it satisfied from the presumption arising from the length of time." In *Henderson v. Lewis*, 9 Serg. & Rawle, 384, it is said, "It was necessary for the sake of convenience and repose to establish some certain period after which payment should be presumed from the lapse of time alone, and that period was, in analogy to the statute of limitations, fixed at twenty years." The rule creates a presumption less than conclusive,

yet *prima facie* evidence of payment, casting the burthen of countervailing evidence on the opposite party.—*Cope v. Humphrey,* 14 Serg. & Rawls, 24; *Palmer v. Dubois,* 1 Mills (Con. Rep.) 86; *Nickle v. McFarlane,* 3 Watts, 265. In the case of *Kline v. Kline,* 20 Penn. St. (8 Harris) 503, the non-residence of the debtor was held insufficient to rebut the presumption. The court say, "Though not possessing the force of a statutory limitation, which extinguishes the debt and requires a new promise or its equivalent to revive it, the presumption of payment from lapse of time is very strong, and is favored in law as tending to the repose of society and the discouragement of stale claims. It may indeed be rebutted, but only by circumstances which raise a stronger counter-presumption." It was said by the same court, in *Foulk v. Brown,* 2 Watts, 209, "The rule of presumption, when traced to its foundation, is a rule of convenience and policy, the result of a necessary regard to the peace and security of society. No person ought to be permitted to lie by whilst transactions can be fairly investigated and justly determined, until time has involved them in uncertainty and obscurity, and then ask for an inquiry. Justice can not be satisfactorily done when parties and witnesses are dead, vouchers lost or thrown away, and a new generation has appeared on the stage of life, unacquainted with the affairs of a past age and often regardless of them. Papers which our predecessors have carefully preserved, are often thrown aside or scattered as useless by their successors. It has been truly said, that if families were accustomed to preserve them, they would accumulate to a burthensome extent. Hence statutes of limitations have been enacted in all civilized communities; and in all cases not within them, prescription or presumption is called in as an indispensable auxiliary to the administration of justice. Courts of equity consider it mischievous to encourage claims founded on transactions that took place at a remote period.—2 Sch. & Lef. 71. It therefore grants no relief after a great length of time. In a word, the most solemn muniments are presumed to exist, in order to support long possessions; the most solemn of human obligations lose their binding efficacy, and are presumed to be discharged, after a lapse of many years."

Again, in *Bull v. Towson,* 4 Watts & Serg. 569, it is said, "Even in equity courts, twenty years is a positive bar, by repeated decisions, founded on sound principles," and the court declined to consider whether an admission *or* promise, made by a trustee on whom it was sought to fix liability, after the lapse of time had run, would countervail the pre-

[Harrison et al. v. Heflin, Adm'r, et al.]

sumption. In *Clark v. Hopkins*, 2 Johns. 556, the plaintiff moved for leave to enter up judgment on a bond and warrant of attorney of eighteen years standing. The usual affidavit of the execution of the bond and its non-payment—and further, of the insolvency of the obligor, was produced. The court said, "It would be against all rule to permit a judgment to be entered up on a warrant of attorney, after the lapse of eighteen years, on the usual affidavits. It has been decided that after eighteen and twenty years a bond will be presumed to have been satisfied. The obligee ought to show a demand of payment and an acknowledgment of the debt, within that time, to rebut the presumption."

The presumption had its origin in the same necessity and in the same public policy on which statutes of limitation are founded. "They are statutes of repose, to quiet titles, to suppress frauds, and to supply the deficiency of proof, arising from the ambiguity and obscurity, or the antiquity of transactions. They proceed upon the presumption that claims are extinguished, or ought to be held extinguished, whenever they are not litigated in the proper forum, within the prescribed period. They take away all solid grounds of complaint, because they rest on the negligence or *laches* of the party himself. They quicken diligence by making it in some measure equivalent to right. They discourage litigation by burying in one common receptacle all the accumulations of past times, which are unexplained, and have now from the lapse of time become inexplicable."—Story's Con. Laws, § 576.

In equity its application was to discourage stale demands and to prevent their enforcement at law.

At law it is applied to demands not within the letter of the statute of limitations. The laches of the creditor in failing to make earlier claim, is not so much regarded as the necessity of putting an end to litigation—the appointment of a period which shall foreclose all controversy.

In England and in several of the States of the Union, the presumption is by statute made absolute, unless repelled by proof of written acknowledgment, or of part payment made before the time had run.—1 Green. Ev. § 39, note 2.

In *McArthur v. Carrie*, 32 Ala. 88, it is said, "In this, as in most of the States of the Union, there is a growing disposition to fix a period, beyond which human transactions shall not be open to judicial investigation, even in cases for which no statutory limitation has been provided. This period is sometimes longer and sometimes shorter, dependent on the nature of the property and the character of the transaction.

By common consent, twenty years have been agreed on as a time at which many of the most solemn transactions will be presumed to have been settled and closed." The presumption, it was said, was not conclusive, but *prima facie,* capable of being repelled. The action was for the recovery of slaves, and it was expressly decided, the proof which would repel the presumption, *must be addressed to the character of the defendant's possession either in its acquisition or use.* The defendant had acquired possession by a purchase from an administrator at private sale, forbidden by statute, and had retained it, undisturbed, for more than twenty years. The suit was by an administrator *de bonis non,* commenced immediately on his appointment. Until his appointment there was no party capable of suing, and the possession of the defendant was not protected by the statutes of limitations.—*Hopper v. Steele,* 18 Ala. 828; *Lay v. Lawson,* 24 Ala. 184. It was therefore insisted the presumption could not be drawn. The court, regarding the presumption as more general in its operation than the statute of limitations, held the want of a proper party to sue would not overturn it. In *McCartney v. Bone,* 40 Ala. 536, it was held that infancy and coverture would not avail to rebut the presumption. The counsel for appellants insist this expression of opinion was in that case mere *dictum,* as the question was not presented. In this they are in error. The coverture of the party seeking from an administrator a final settlement in the court of probate, when the time would have commenced running, and during much of the period of twenty years, was relied on, and was deemed by the primary court sufficient to repel the presumption. The question was directly presented, and was, indeed, the point decisive of the case.

Without departing from these decisions, we can not hold the period of the war, during which the statutes of limitations were suspended, must be excluded in computing the twenty years, from the lapse of which the presumption of payment and satisfaction arises, creating a positive bar to the demand preferred by the bill, in the absence of all evidence that it was within that period recognized or admitted as a subsisting liability. The suspension of the statute, is by force of Ordinance No. 5, of the Convention of 1865, (R. C. 53), and rests on the difficulty or impossibility of suit while the community were harrassed and perplexed by war, and the courts were either closed or embarrassed in the exercise of authority. This may acquit suitors from the imputation of laches, but the presumption rests not only on the want of diligence in asserting rights, but on the higher ground that it is necessary to suppress frauds, to avoid long dormant

claims, which, it has been said, have often more of cruelty than of justice in them—that it conduces to the peace of society and the happiness of families; "and relieves courts from the necessity of adjudicating rights so obscured by the lapse of time and the accidents of life, that the attainment of truth and justice is next to impossible." If the war rendered suits difficult or impossible, from it also resulted the destruction and loss of records, and other instruments of evidence, and the death or the dispersion of witnesses. The memory of transactions more recent than that on which the right of the complainants depend has been clouded, so that it is now difficult, by judicial investigation, to ascertain and determine their true character. The necessity for protection against ancient claims, which may have been discharged or satisfied, and the evidence lost, has been by the war increased rather than diminished. The presumption has not been countervailed by evidence of disability of suit, all the war can be said to have created, and its value would be lessened if the exception were now allowed.

It is perhaps true, greater force and a larger operation has been given the presumption by this court, than the current of authorities sanctions. It has been in obedience to a well defined public policy, which requires a fixed period of time that shall silence judicial controversies. Statutory enactment declares emphatically that no disability of suit shall extend the period of limitation, so as to allow an action to be commenced, entry or defense made, after the lapse of twenty years from the time the cause of action or right accrued."—R. C. 2910.

For more than thirty years the tendency of our legislation has been to narrow the period in which rights must be asserted and actions prosecuted.

In 1843, all actions for the recovery of lands, whether founded on title or the right of entry, or of possession, were limited to ten years, though former statutes had prescribed the period of twenty or of thirty years. The bond on which this demand is founded, had existed for more than thirty years when this suit was commenced. The principal is dead, and had been for more than twenty-three years before the suit. All the sureties are dead, insolvent or resident in other States.

So far as is disclosed by the bill, there is not a living witness of the transactions from which a liability is sought to be imposed. When the principal died, and for a long time thereafter, it is apparent his estate was sufficient to answer all the demands of the appellants. The surety whose estate

Vol. LIV.

[Barnard v. Davis et al.]

is now to be charged, died more than twenty-seven years after the execution of the bond, and consistent with every fact averred, is the presumption that the lapse of time had rendered him oblivious of the fact that he had ever joined in its execution or incurred an obligation for the principal. A stronger case for the application of the presumption of discharge and settlement, could not well be presented. While we do not concur in the opinion of the chancellor, the decree rendered, sustaining the demurrer, was proper, and must be affirmed.