## BALKHAM *et al.* *v.* WOODSTOCK IRON CO. *et al.*

*(Circuit Court, N. D. Alabama, S. D.  1890.)*

1. ADVERSE POSSESSION—COLOR OF TITLE.
    Land belonging to the estate of a testator was sold by the administrator by order of court in 1866, the widow becoming the purchaser, and thereafter holding the land under such sale until she sold the same to other parties. *Held*, that though the order of sale may have been void, the deed in pursuance thereof, for which the widow paid a valuable consideration, is sufficient color of title to make her possession, and that of those claiming under her, adverse to the heirs.

2. LIMITATIONS—ACTION FOR LAND.
    Where the heirs bring suit to recover such land in 1889, their recovery, under the laws of Alabama, is barred by the lapse of more than 20 years from the date of the sale by the administrator.

At Law.

In accordance with the instruction of the court, the jury returned a verdict for defendant.

*James H. Savage, Kelley & Smith*, and *Smith & Lowe*, for plaintiffs.

*Knox & Bowie, Caldwell & Johnson, D. C. Blackwell*, and *Brothers, Willett & Willett*, for defendants.

BRUCE, J.   This suit is in ejectment.   There is an agreement in writing as to the facts in the case.   The plaintiffs are the only heirs at law of one Samuel P. Hudson, who died intestate on the —— day of August, 1863.   He was at the time of his death seised and possessed of the land in controversy, together with other adjoining lands, and left surviving him a widow, Keziah A. Hudson, who died June 26, 1879.   Prior to 1866, one J. F. Grant was the regularly appointed administrator of the estate of Samuel P. Hudson, and took possession of the estate as such administrator, including the land in question.   On the 20th day of March, 1866, James F. Grant, as administrator, under the order of the probate court of Calhoun county, Ala., sold the land in controversy, subject to the widow's right of dower, and at such sale Keziah A. Hudson, widow of Samuel P. Hudson, became the purchaser of the land in suit for the sum of $450, which amount she paid to the administrator in cash, and he executed a deed of conveyance to her of the property.   That she, Keziah A. Hudson, was in possession of the land, at the time, and continued to hold possession of the same until the 28th of October, 1869, when she conveyed it to Sherman and Boynton, by deed in the usual form, and surrendered possession to the grantees Sherman and Boynton, who afterwards conveyed to Hill Jeffers, who in turn, in 1874, conveyed to the Woodstock Iron Company, defendant in this suit, who afterwards sold and conveyed the land to the Anniston Land & Improvement Company, who in turn sold and conveyed it to the Anniston City Land Company.   All these conveyances were in the usual form of deeds of warranty in fee-simple, and were duly recorded.   James F. Grant, the administrator, died in the year 1878, and Alexander Woods, who was probate judge during the administration of the estate of Hudson, de-

ceased, died in the year 1878. This suit was commenced June 8, 1889, and is the second suit for the property between the same parties. The plaintiffs contend that they have the right to recover the land in suit upon the facts stated; that they had no right or capacity to sue until the termination of the life-estate of Keziah A. Hudson, who died June 26, 1879, and the suit was brought within the 10 years under the statute of limitation of Alabama, which would not operate a bar until June 26, 1889. It is not claimed by the defendants that the plaintiffs are barred by the statute of limitation of 10 years, but it is claimed by the defendants that the plaintiffs are barred by the lapse of more than 20 years from the date of the administrator's sale of the land in question to Keziah A. Hudson, under whom they claim by a continuous, open, and unchallenged actual possession of the lands under claim of title from March, 1866. There are other questions in the case, but it will be necessary to refer to them only so far as they are connected with the question of the effect of the lapse of more than 20 years from the date of the administrator's sale to the commencement of the suit, coupled with possession under claim of title on the part of defendants, and those under whom they claim, which is the decisive question in the case.

The contention of the plaintiffs is that the sale by the administrator of the lands in question under the proceedings of the probate court, and the deed of conveyance by the administrator to Keziah A. Hudson, are void, and cannot operate to divest their title to the land as the heirs of Samuel P. Hudson.

Two objections to the probate court proceedings are mainly relied upon: *First*, that the order of sale which was granted by the probate court was not supported by testimony taken by deposition as in chancery cases, as provided by the statute of Alabama in such cases; and, *second*, that there was no order authorizing the administrator to make the conveyance of the property which he did make to the purchaser, Keziah A. Hudson. It is claimed by the defendants that in a collateral attack of this kind the probate court proceedings are not assailable; but, without discussing these questions, even if the contention of the plaintiffs can be maintained, still the proceedings in the probate court are competent to show the character of the possession of Keziah A. Hudson, of the land in question, from the time of her purchase at the sale by the administrator. In the agreed statement of facts in the case it is said "that Keziah A. Hudson held possession of the land in controversy from the date of said deed by said administrator claiming to hold same under said purchase, and conveyance of said lands by said administrator, and in her own right, until she sold the same to Sherman and Boynton," etc. She was the life-tenant, but she was more than that, and held possession under the deed of the administrator to the property, for which she had paid the consideration of $450. Under such a state of facts, the deed of the administrator to her was at least color of title, and, however vulnerable the probate court proceedings may have been, she was in possession, with an equitable right to the property, and that possession, and the possession of those claiming

under her, remains unchallenged until the commencement of the litigation on the part of the heirs of Hudson, which is more than 20 years. The plaintiffs contend, however, that this possession thus maintained cannot be held to have been adverse to them, except from the date of the death of Keziah A. Hudson, the life-tenant, which occurred June, 1879; and a line of authorities are cited to the proposition that the possession of the life-tenant is not adverse to the remainder-man; that it is, in fact, the same possession, and that the right of entry of the remainder-man does not accrue until the death of the life-tenant; citing *Pickett* v. *Pope*, 74 Ala. 122, and many Alabama and other authorities. Concede the rule, as stated, to its full extent, that the statute of limitations of 10 years can operate no bar until the 10 years from the date of the death of the life-tenant has expired, still, does it follow that the 20-year rule could only begin to run from the date of the death of the life-tenant? We have just seen that Keziah A. Hudson was more than a life-tenant, and we are not dealing with a case in which the life-tenant had simply and only a life-estate and right to the property, and undertook by deed in fee-simple to convey the full title to the property. I do not say that even in this case the statute of limitations of 10 years could begin to run before the death of the life-tenant. Still, does it follow that in a case like this the 20-year rule of prescription does not begin to operate until the death of the life-tenant? The plaintiffs contend that, in cases where the statute of limitations of 10 years could not begin to run by reason of the fact that the right of entry had not accrued to the heirs, in like manner the 20-year rule could not begin to operate. If that view of the subject be correct, it would be equivalent to two statutes of limitation,—one 10 and the other 20 years,—and whatever would defeat the 10-year statute would also defeat the 20-year statute; so that there could be no operation to the 20-year rule at all, for in every case in which the 20-year rule could operate a bar the 10-year limitation would already have perfected the bar. The statute of limitation of 10 years, and what may be called the "20-year rule of repose," are different in their nature and operation. The statute of limitation is avoided by disability, such as infancy and coverture; but the 20-year rule may be and is applied even where disabilities exist.

The case of *Harrison* v. *Heflin*, 54 Ala. 563, was a case of the purchase of slaves from an administrator at private sale, forbidden by the statute, and where, after the lapse of 20 years, at the suit of an administrator *de bonis non*, the court say:

"Until his appointment there was no party capable of suing, and the possession of the defendant was not protected by the statute of limitations. It was therefore insisted the presumption could not be drawn. The court, regarding the presumption as more general in its operation than the statute of limitations, held the want of a proper party to sue would not overturn it."

In the same opinion the case of *McCartney* v. *Bone*, 40 Ala. 533, is cited, where it is held that infancy and coverture would not avail to rebut the presumption. In *Bozeman* v. *Bozeman*, 82 Ala. 389, 2 South. Rep. 732, the court say:

"The rule is one of presumption, based on the broad doctrine of prescription, and is not to be rebutted. It has in view the peace and security of society, and is applicable, as often held, to all human transactions which are open to judicial investigation. The doctrine is broader and more comprehensive than a mere statute of limitations, although based upon analogous principles."

These cases were not suits in ejectment, like the one at bar, but they show the difference between the application of the statute of limitations and the 20-year rule of repose.

It is argued that in cases of this kind the life-estate might continue during the whole period of 20 years, and that in such case at no time could the heir bring his suit, and therefore could no laches be imputed to him. The answer to that proposition is found in the case of *Iron Co.* v. *Fullenwider*, 87 Ala. 587, 6 South. Rep. 197, where the supreme court of Alabama say:

"The plaintiffs in the present case, as reversioners, had no right, as we have said, to sue at law, but they had a right to go into a court of equity to remove the cloud from their title created by the probate court proceedings."

Plaintiffs' counsel strenuously attack this proposition as unsound in point of law, and an elaborate brief on that subject is presented, citing Alabama and other authorities. Without discussing or passing upon this question I prefer to rest my opinion upon a different ground, already indicated, in part, at least, by what has been said. It is said that all statutes of limitations are based upon the theory of laches, and no laches can be imputed to one while he has no remedy or right of action. And this proposition, as applicable to statutes of limitations, is conceded. But is it equally applicable to the 20-year rule of repose in Alabama? We have already said that Keziah A. Hudson was not only the life-tenant, but she was more than that, she was the purchaser at the administrator's sale, paid the purchase price, and in the agreed statement of facts it is said that she held possession of the land in controversy, * * * claiming to hold the same under said purchase, and conveyance of said lands by said administrator, and in her own right. It is said that Keziah A. Hudson took nothing by the said proceeding in the probate court. But she at least parted with her money, the purchase price of the property, and it is certainly true that she had a right to the property, or to have her money refunded; and to say that her possession will be limited under such circumstances to her right as a life-tenant, and will be conclusively presumed to be friendly to the title and right of the heirs, is a proposition which cannot be maintained. If her possession was not strictly and technically adverse to the heirs, it was at least adversary in its character, and had in it no element of admission of the title of the heirs. It is said that Keziah A. Hudson had the right to resort to a court of equity to compel the heirs to elect a ratification or rescission of the contract of the purchase of the property. There is in this suggestion a concession that laches are chargeable to one or the other of the parties to this suit, and the idea must be to shift the burden, and charge the defendants with the duty of becoming actors as

to the land in controversy.    It cannot be maintained, however, that one
who holds lands under a bad or defective legal title, but who has an eq-
uitable right to the property, must, under the penalty of the imputation
of laches, go into a court of equity to perfect his title.    In the case of
*Ruckman* v. *Cory*, 129 U. S. 387, 9 Sup. Ct. Rep. 316, the court say:

"'Laches,' the supreme court of Illinois has well said, 'cannot be imputed
to one in the peaceable possession of land, for delay in resorting to a court of
equity to correct a mistake in the description of the premises in one of the
conveyances through which the title must be deduced.   The possession is no-
tice to all of the possessor's equitable rights, and he need to assert them only
when he may find occasion to do so.'"    Citing authorities.

This case and others might be cited to show the force and effect which
courts are disposed to give the fact of open, notorious, adverse possession
of property, (real estate,) maintained for so long a period of time under
color and claim of right.    It may be said, and is said in substance, that
the logic of this proposition is that, even in a case like the one supposed,
when the life-tenant should hold the entire period of 20 years, that the
possessor of the property would have a good title against the heir.    But
whethe~ the courts would go to this extent we need not say here, for
this is not a case like the one supposed.    The administrator's sale under
which defendants claim title was made March, 1866; and 20 years would
carry the time to March, 1886.    The life-tenant died in June, 1879; so
that from that time to the time the 20 years expired, a period of about
7 years, there was nothing to prevent these plaintiffs from bringing
their suit.    And it would seem the clear result from the authorities that
in such a case laches will be presumed as a conclusion of law against
them, and in favor of the actual possessors of the property.    There is in
this case the lapse of a period of near 24 years, during all of which time
the defendants and those under whom they claim have maintained actual
possession of the land in question under claim of title entirely incon-
sistent with the claim of these plaintiffs to the property.    And it would
seem to be the clear result of the rulings of the supreme court of Ala-
bama, in numerous cases covering the entire period of its history as a
state, that in such a case the court will presume almost anything in favor
of defendant's title; that it will presume regularity in the probate court
proceedings under which title is claimed; that it will supply missing
links in the defendant's paper title, and will allow nothing to overturn
the presumption in its favor, except evidence in the nature of admissions
of plaintiff's title, which is not claimed here.    The following authorities,
with many others which might be noted, are in support of the proposition
above stated:    *McArthur* v. *Carrie*, 32 Ala. 76; *Matthews* v. *McDade*, 72
Ala. 377; *Kelly* v. *Hancock*, 75 Ala. 229; *Gosson* v. *Ladd*, 77 Ala. 223;
*Iron Co.* v. *Fullenwider*, 87 Ala. 584, 6 South. Rep. 197.    The Alabama
cases seem to have established the 20-year rule of repose as applicable to
cases like the one at bar in such a way as that it has become a rule of prop-
erty in this state; and that being so, the federal courts sitting in this state
are bound to follow it, under the principles settled by the supreme court
of the United States in many cases, among which may be cited, *Burgess* v.

*Seligman,* 107 U. S. 21, 2 Sup. Ct. Rep. 10.    The cases cited and relied on by the plaintiffs' attorneys are mainly cases from other states, and, however pursuasive they may be in such states, they cannot be held to be controlling here, and they are, some of them at least, distinguishable from the case at bar in this: that the life-tenant had no other or greater interest or claim to the property than the bare life-estate, and undertook by the terms of his conveyance to convey an absolute title in fee to the property.    That is not this case, unless it can be maintained, as argued, that Keziah A. Hudson took nothing by the purchase at the administrator's sale,—a proposition which we have clearly considered.    If the rule of which we are speaking was less firmly settled by the decision of the court of last resort in this state, and the door was wide open, inviting entrance upon the investigation of the question as it has been decided in the federal courts, still it is believed that the plaintiffs here would meet with no great encouragement.    The supreme court of the United States has in many reported cases, though perhaps none like the case at bar, given little favor to stale demands, or to parties chargeable with laches in the assertion of their rights.    The jury is instructed that, if they believe the evidence, they will find for the defendant.