(127 So. 544)

**ADAMS et al. v. ALABAMA LIME & STONE CORPORATION.**

**6 Div. 478.**

Supreme. Court of Alabama.

March 27, 1930.

W. A. Denson, of Birmingham, for appellants.

Horace C. Wilkinson, of Birmingham, for appellee.

BOULDIN, J. (after stating the case as above).

We deal first with the merits of the alleged demand of $30,621.95 presented by the bill as a set-off against the Adams judgment against complainant.

Taking the averments of the bill as a whole, it is not shown that the holder of the Dimmick mortgage was a party to any of the alleged agreements; nor is it denied that the mortgage continued to be an incumbrance upon the property purchased by complainant.

Construing the bill most strongly against the pleader, we infer the property was conveyed to complainant; that such lands, or the proceeds, are still held by and part of the assets of complainant corporation.

■ The removal of a mortgage incumbrance upon its property, although created by and due to be paid by another, is not within itself a voluntary gift of corporate funds, nor per se a misappropriation of same. Ordinarily payment of the mortgage by the purchaser is a proper course to protect his title and to ripen a cause of action against him who was under legal duty to pay but failed so to do.

Adams' personal liability for the mismanagement of corporate affairs in the performance of his trust as an officer and general manager of complainant corporation turns on the averments imputing wrongful conduct in putting his company in position to suffer loss by reason of such incumbrance.

We have much difficulty in construing the averments of the bill in this regard. The several documents evidencing the transaction are not exhibited, but complainant relies upon a general statement of their substance and effect.

It appears that Gewin, the original purchaser of the Dimmick property and the maker of the purchase-money mortgage finally paid off by Adams acting for complainant, first sold the property to Calera Development Company, subject to said mortgage; that later this company sold all its assets to complainant, including this Dimmick property, subject to said mortgage, the entire consideration being 11,000 shares of common stock of complainant corporation.

A purchase "subject to a mortgage" is the usual form of expression for a purchase of the equity of redemption, the interest of the mortgagor, the purchaser undertaking to protect his purchase by satisfaction of the mortgage.

But it is **next** averred in general terms that Gewin was obligated to pay this mortgage and complainant was not. This averment is repugnant to that last mentioned. The whole must be taken most strongly against the pleader.

It is then averred that Adams and Gewin obtained permission from the state securities commission for the corporations represented by them to make the deal, but on the express condition that the Dimmick property be conveyed free from all incumbrance; the mortgage to be paid off by the maker, Gewin.

Nevertheless, it is averred, Adams did issue to Gewin the 11,000 shares of stock without prepayment of the mortgage debt.

No question of ultra vires nor demand for rescission because of violation of a condition imposed by order of the securities commission is presented. Whether the securities commission had any jurisdiction of such transaction or made any legal order in the matter are questions not raised by the pleadings before us. No decision thereon is to be inferred from this opinion. We treat the case as one where an agreement modifying the original contract is relied upon.

So, as we construe the bill, its omissions, and implications, here is an executed contract, the complainant receiving a conveyance to the land, and the vendor receiving the stock, as one and the same transaction—a status so remaining until this day.

One defect in the bill is failure to aver that Adams was acting without the consent, approval, or direction of .the complainant itself in thus closing the deal, and in the subsequent payment of the mortgage debt.

The averments as to want of knowledge of the present management fall far short; do not show what was the knowledge nor the action of the corporate body at the time complained of.

Another complaint in the bill is that after issuing the 11,000 shares of stock, Adams and Simmonds purchased such stock individually from Gewin and voted same in stockholders' meeting. It is not shown wherein this transaction worked injury to the complainant.

It is then averred that Adams and Simmonds acquired 4,935 shares each from Gewin, whether the same as above does not appear, agreeing to pay $100,000 for same; that Gewin had agreed to sell so much of such stock as necessary to pay off this mortgage, and that Adams and Simmonds subsequently sold the stock with the mortgage still remaining on the lands.

If, by these averments, it is intended to charge Adams with' having wrongfully discharged or released a lien held by complainant on this stock for Gewin's indebtedness to complainant growing out of the mortgage

transaction, they are quite insufficient. They do not show such lien, if any, has been lost.

Taken literally, it is merely charged that Gewin promised to sell stock enough to pay off this mortgage; that he did sell $100,000 worth of stock. Whether he has been paid for it is not shown. If not, the bill does not seek to reach this unpaid indebtedness to Gewin. He is not made a party.

The bill does not aver that Gewin is not and has not been at all times solvent; that no adequate remedy against him exists in favor of complainant, if he became legally bound to pay off this mortgage.

The last payment of $24,359.39 alleged to have been made by Adams for complainant company to Dimmick is alleged to, have been made only a few months before the management of complainant's business passed out of Adams.

Treating the bill as one not for conversion of complainant's funds, such as applying same to the officer's personal use or benefit, but as one for mismanagement of corporate affairs, it should show a loss as a result of such mismanagement, or some equitable right in complainant to treat the officer as its debtor.

In case it shall be made to appear that complainant has a valid demand against respondent, what of the right to an injunction and set-off?

It is quite well settled that in a proper case a judgment at law may be enjoined where complainant has a valid set-off and the plaintiff in the judgment is insolvent. Stewart v. Burgin, 219 Ala. 131, 121 So. 420, and cases there cited.

An averment that the plaintiff has not assets sufficient to meet his indebtedness to defendant in the judgment is a sufficient averment of insolvency.

But insolvency, without more, will not warrant equitable interference, if the set-off was equally available at law. A purely legal demand owned by the defendant at law at the time of suit brought, and purposely or by mere neglect not interposed at law, will not support a bill in equity for set-off on the sole ground of insolvency. This is only another way of saying one may not of his own election or by mere neglect create in himself an equity.

True, a defendant at law is not required to interpose a set-off. He may elect to sue upon it separately; but this does not mean an election to create an equitable right in himself. Middleton v. Foshee, 192 Ala. 265, 68 So. 890; Pearce v. Winter Iron-Works, 32 Ala. 68.

Complainant avers the management during the pendency of the suit at law did not know of the existence of the set-off. This averment is challenged for not showing dili-

gence or freedom from neglect in failing to discover this defense.

Diligence is a maxim in equity of wide application. Some diligence should be shown in defending lawsuits, as elsewhere. A failure so to do may be deemed neglect within the rule laid down in above cases.

■ Considering the injustice pointed out in Stewart v. Burgin, supra, in permitting a party to collect from his adversary and then to defeat his own debts by reason of insolvency, we are not disposed to impose a severe rule of diligence in this regard. If concealment or other fraudulent act was a factor in preventing discovery, no advantage must accrue therefrom.

■ If, however, the subject-matter of the set-off appears on the books of complainant itself, and is of such magnitude that the ordinary performance of duty in defending a lawsuit would discover its existence, we think neglect would be imputable. The bill shows this set-off was discovered by the state securities commission on examination of complainant's affairs. It should go further and show something other than the affairs shown by the books as furnishing evidence thereof, or some other excuse for failure of complainant to discover same.

■ What we have written touching neglect to plead set-off at law is on the assumption that complainant's demand, when properly set up, is of the character asserted in brief, a wrongful conversion or donation of complainant's funds, a demand equally available at law. A purely legal demand may arise from a breach of trust by a corporate officer.

But if the remedy in equity is more adequate, or rests upon equitable principles, then the failure to present the set-off at law is no defense to a bill of this character. When and if complainant shall so amend the bill as to present a meritorious demand, then its character will point the way to the application of above rules.

It does not affirmatively appear from the bill that any statute of limitations has barred the cause of action (Montgomery L. Co. v. Lahey, 121 Ala. 137, 25 So. 1006); hence it is immaterial whether the averments of failure to discover are sufficient to bring the case within the statute extending time in case of fraud.

The decree of the court below is reversed, and one here rendered sustaining the demurrer to the bill, and the cause is remanded with leave to amend within thirty days, or such further time as the court below in his discretion may grant.

## W. A. Denson's Appeal.

W. A. Denson filed in the cause his petition setting up that he was attorney for John H. Adams in the suit at law, and as such prosecuted the same to judgment. The written contract of employment, stipulating for the payment of a specified portion of the recovery as attorney's fee, and assigning any judgment recovered as security, was made exhibit. The petition then proceeds:

"Petitioner further avers that great and irreparable injury will be inflicted upon him by the failure of the complainant to at once pay in to the Court said amount of money which is now due, unpaid, and the property of the petitioner, and is wrongfully and legally withheld from the petitioner by the complainant.

"Wherefore, the premises considered, your petitioner prays this Honorable Court that an order be made directed to the complainant, requiring it to pay into this court said sum, now due and unpaid, which is the property of your petitioner."

Complainant demurred to the petition, assigning as grounds: No equity in the petition; petitioner not shown to be entitled to the order asked for; petitioner's claim subject to the right of set-off set up in the bill.

The demurrer was sustained, and appeal is also taken from that decree.

■ While in the nature of a bill of intervention, it seems the petition asks a summary order directing the complainant to pay over money, petitioner's property, wrongfully withheld.

No right to such summary order is shown. If petitioner has a lien upon or interest in the judgment, in the nature of an indebtedness due him, his claim is to be enforced as other demands by regular proceedings inter partes adjudicating in the usual manner the rights of the parties. The decree sustaining the demurrer may be upheld for want of any appropriate prayer.

■ But both parties brief the question on its merits; and it seems proper the question should be determined.

In Warfield v. Campbell, 38 Ala. 527, 82 Am. Dec. 724, a bill to establish a set-off against a judgment, the court speaking through Chief Justice A. J. Walker considered the question at length, and noted the great conflict in authority. Without deciding on the priority as between the attorney's lien and the right of set-off in equity held by defendant in the judgment at the date of its rendition, did declare the right of the attorney was that of an equitable assignee as of the date of the judgment, and hence no set-off thereafter acquired could defeat the attorney's lien.

In Ex parte Lehman, Durr & Co., 59 Ala. 631, set-off of one judgment against another under the statute was involved. The plaintiff in the later judgment sought and obtained in the court below a set-off as against

the older judgment in disregard of the attorney's lien on the older judgment. This was held error. The decision by Chief Justice Brickell reiterated the doctrine of Warfield v. Campbell, supra, to the effect that the attorney stood in the position of an assignee of a judgment as of the date of its rendition, and said: The assignee of any contract, or writing, the evidence of debt, other than commercial paper, takes it subject to all set-offs existing at the time of the assignment. Code 1876, § 2100.

Following these cases, it has been consistently and often declared that the attorney's lien is subordinate to all set-offs held by the judgment debtor at the time of its rendition: McWilliams v. Jenkins, 72 Ala. 480; Jackson v. Clopton, 66 Ala. 29; Mosely v. Norman, 74 Ala. 422; Higley v. White, 102 Ala. 604, 15 So. 141; Ex parte Cooper, 212 Ala. 501, 103 So. 474.

In the last-cited case set-off of a judgment as against the attorney's lien was held to arise at the date of the judgment, not the accrual of the cause of action of such character as was not the subject of set-off until reduced to judgment.

We do not think this settled rule, declaring in effect that the attorney's lien on a judgment rises no higher than the judgment itself at the time of its rendition, has been changed by our statute, now Code, § 6262. The priority of attorney's liens on judgments under subdivision 2 is expressed in the same terms as in subdivision 3 conferring attorney's liens on property, real or personal, recovered in suits therefor. It could hardly be supposed the attorney's lien on property is made to displace existing liens or equities therein. Subdivision 2 declares: "* * * And attorneys at law shall have the same right and power over said suits, judgments and decrees, to enforce their liens, as their clients had or may have for the amount due thereon to them."

We are not unmindful of the strong line of cases in other jurisdictions. They are much divided, and Alabama is generally cited by annotators as holding the views above expressed.

It is often said with force this view destroys, wipes out the judgment, the subject-matter on which the lien is declared; that it is sound policy to protect the attorney whose professional labors have brought the judgment into being. Obviously our statutes aim to protect attorneys as to the effects of their clients involved in the litigation. There is likewise strong reason for saying the rights of the attorney should be limited to those of his client.

If, when all equities are worked out, it is decreed that complainant was never due to pay respondent anything, it is difficult to see why complainant should pay attorney's fees for the other side.

The demurrer was properly sustained.

The matter is here presented by appeal and by alternative petition for mandamus. In our ex parte cases above cited, mandamus was recognized as the remedy to vacate an order granting a motion to set-off judgments, one against the other.

 But this is in the nature of a bill in equity to establish and enforce a lien. We think an appeal from an interlocutory decree on demurrer thereto may be taken under the statute as in other cases.

On appeal of John H. Adams et al., reversed, rendered and remanded.

On W. A. Denson appeal, affirmed on appeal; mandamus denied.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.