78 So.2d 625

**F. I. EATMAN**

v.

**Floyd GOODSON et al.**

**F. I. EATMAN**

v.

**Naomi GOODSON.**

**2 Div. 336.**

Supreme Court of Alabama.

Nov. 4, 1954.

Rehearing Denied March 10, 1955.

Jones, McEachin & Ormond, Tuscaloosa, for appellant.

LeMaistre, Clement & Gewin and Perry Hubbard, Tuscaloosa, for appellees.

244

SIMPSON, Justice.

These two cases, tried together below and consolidated here in one record, involve bills in equity, brought by Floyd and Naomi Goodson, seeking to enjoin the enforcement of two judgments in an effort to effect a setoff against them. From a decree granting relief to complainants the defendant appeals.

Only the salient facts as found by the trial court and established by the evidence and necessary to an understanding of our decision will be mentioned. In 1922 Floyd and Naomi Goodson, being husband and wife, were joint owners of some real estate in Greene County. On July 29, 1922, they executed a mortgage on this property to Banks & Company to secure the payment of two notes totaling $908.31. In January, 1925, Banks & Company transferred this mortgage to F. I. Eatman, the respondent and appellant in these cases. At this time there was balance due on the notes in the amount of $328.68. This amount was still due on January 29, 1932, when Eatman foreclosed the mortgage and bought in the property for $2,500. The difference of $2,171.32 Eatman never paid over to the Goodsons and it was a finding of the trial court that the same was still owing and due. (Eatman's evidence, however, tended to show that this amount was credited to an account which the Goodsons owed at his store.) On March 9, 1932, Naomi Goodson redeemed or bought the property back from Eatman for $2,557.97.

Floyd Goodson kept a running account with Eatman which covered purchases made to operate the farms belonging to the Goodsons. At the end of each year the account was balanced and Floyd and Naomi would sign a note covering the amount. On March 9, 1931, Floyd and Naomi executed such a note to Eatman for the amount of $2,700. This note was due and payable on October 15, 1931. Eatman brought suit on this note claiming a balance due of $718.32 as of January 29, 1932, the balance being reduced to that amount by reason of the $2,171.32 credit owing the Goodsons from the foreclosure sale. A judgment by default was taken against Floyd and Naomi in this suit on September 18, 1933. The judgment was for $912.15. So much for the facts in the case where the judgment was rendered against Floyd and Naomi.

The other case relates to a judgment against Floyd, Charles and Lula Goodson. On October 14, 1929, Floyd Goodson signed a note as surety for Charles and Lula. Suit was brought on this instrument and on March 21, 1932, a judgment was taken against all three for $413.90.

In November, 1952, an order of scire facias revived the above two judgments pursuant to a decision of the Court of Appeals in the case of Eatman v. Goodson, 36 Ala.App. 360, 58 So.2d 129, certiorari denied 257 Ala. 239, 58 So.2d 133.

Complainants by the present bill as last amended seek to set off against these two judgments the $2,171.32 debt which Eatman became owing to Floyd and Naomi Goodson when he purchased the real estate at the foreclosure sale in January, 1932. Several defenses, including res judicata and statute of limitations, were interposed, but as we view the cases it is not necessary to treat all of the issues raised thereby.

The trial court permitted the setoff against the $912.15 judgment against Floyd and Naomi Goodson, denied it on the $413.90 judgment against Floyd, Charles and Lula Goodson, and enjoined the levy of executions against any lands of Naomi Goodson.

It is, of course, true that a claim is not lost just because it is not asserted as a setoff at the earliest opportunity. Dunham Lumber Co. v. Holt, 124 Ala. 181, 27 So. 556.

And in a proper case equity will enforce a setoff against a judgment at law. Stewart v. Burgin, 219 Ala. 131, 121 So. 420. In the Stewart case equitable intervention to permit the setoff against an insolvent judgment creditor was rested on the fact that the judgment had been obtained in an action of detinue in which the setoff could not have been pleaded. But the court quoted with approval the statement in the case of North Chicago Rolling-Mill Co. v. St. Louis Ore & Steel Co., 152 U.S. 596, 615, 14 S.Ct. 710, 715, 38 L.Ed. 565, 572, which pointed out:

"Cross demands and counterclaims, whether arising out of the same or wholly disconnected transactions, and whether liquidated or unliquidated, may be enforced, by way of set-off, whenever the circumstances are such as to warrant the interference of equity to prevent wrong and injustice."

And " * * * that equity will entertain jurisdiction, and afford relief against the collection of a judgment, where, in justice and good conscience, it ought not to be enforced, as where there is a meritorious, equitable defense thereto, which could not have been set up at law, *or which the party was, without fault or negligence, prevented from interposing. * * . * "* (Emphasis supplied.)

In Adams v. Alabama Lime & Stone Corp., 221 Ala. 10, 14, 127 So. 544, 548, this court stated:

"But * * * A purely legal demand owned by the defendant at law at the time of suit brought, and purposely or by mere neglect not interposed at law, will not support a bill in equity for set-off on the sole ground of insolvency. This is only another way of saying one may not of his own election or by mere neglect create in himself an equity.

"True, a defendant at law is not required to interpose a set-off. He may elect to sue upon it separately; *but this does not mean an election to create an equitable right in himself.* * * * "* (Emphasis supplied.)

To come within the purview of the cases permitting equitable intervention to invoke a setoff and to avert the operation of the rule that the judgment debtor may not create an equitable right in himself by refraining from enforcing his claim at law, the complainants alleged that due to the fraud or mistaken representations of Eatman at the time of the mortgage foreclosure and at the time of the redemption of the property therefrom they did not know of their being entitled to the claim which they now try to set off. On

this specific point (if well pleaded) the trial court made no finding, but considering the evidence in its most favorable aspect to the complainants, we are unable to say that the allegations were made out. But even more, complainants' own testimony shows their utter negligence in failing to ascertain the existence of the claim if it were in fact bona fide and enforceable. Though it is said that a severe rule of negligence will not be imposed where there is fraud or concealment, the effect of our decisions is that neglect in discovering the claim is equally as fatal in equity as neglect in asserting it. Adams v. Alabama Lime & Stone Corp., supra.

The evidence clearly established that Floyd and Naomi are far from illiterate. Floyd testified that he had completed the twelfth grade in school and Naomi testified that she had taught school for years. At least, they seem to have had sufficient intelligence and business knowledge to successfully manage a large plantation for many years. Their numerous executions of notes and mortgages would indicate a knowledge of their nature and significance. There was testimony that Naomi's attorney, when in consultation with Mr. Eatman's attorney and looking into the question of the liability on the note for the balance of $718.32, said to her, "Naomi, you should pay this balance just as soon as you can," and that Naomi spoke up, followed by Floyd, and said, "If we have good crops and good prices we can make a payment this Fall and maybe pay it all." Naomi testified she was present when the property was sold under foreclosure. They employed a lawyer of ability to negotiate the redemption for them and the transaction was closed in his office. All of Eatman's records were available to them at all times. Floyd testified he had told the same lawyer before the sale "to take care of it" for him. It also appeared that they consulted their attorney about the suit in which the judgment against them was obtained. On cross-examination Naomi testified:

"Q. How many times did you see Mr. Aldridge and discuss any of the Eatman matters with him after the re-demption on March 19th, 1932? A. I didn't have any other contact with him no more than when the judgment paper came out, we asked him about it. We consulted him about it, and he said, 'Well, it's not necessary for you to go down there to meet that because you don't have anything to protect yourselves; you don't have any money,' he said, 'It's a false judgment anyhow,' and that's why we didn't come.

"Q. And Mr. Aldridge said there was no use in your going to court to defend yourself against Mr. Eatman's case? A. Yes sir."

■ That they relied on the advice of their attorney, if he did so advise them, does not create an equity. Duckworth v. Duckworth's Adm'r, 35 Ala. 70.

Under these circumstances, although other defenses interposed might lead to the same result, we cannot escape the holding that complainants have not shown sufficient grounds for a setoff in equity. So considered, that phase of the decree is reversed and a decree will be here rendered dismissing the bill on that aspect.

■ The trial court further found that the lands levied on were the sole property of Naomi Goodson and accordingly decreed that the other judgment against Floyd Goodson (and Charles and Lula) could not be satisfied out of such lands and the levy was enjoined. No argument is made with respect to the adequacy vel non of remedy at law, but the finding is assailed here because it is contended that in the same court in case No. A 552 there was a decree rendered in 1950 that the lands are the joint property of Floyd and Naomi Goodson. Part of the bill of complaint and decree in that case were made a part of the record now before us. We view the contention as without merit. That suit was originally filed by Naomi to quiet title to certain lands—only a part of which are involved in this proceeding—and to establish a land line in dispute between Naomi and Eatman. There were other lands embraced in that suit and Floyd was brought in by amendment and it could be assumed from aught

appearing that the reason for bringing Floyd in was because he owned some of the lands embraced in that litigation. True, the rather inexpertly drawn decree described all of the lands as vested in the "complainants" but the status of the title to the respective lands as between Naomi and Floyd was not an issue in the case nor one in which Eatman could be said to have been interested. Their standing in equity was complete on a showing of peaceable possession, claim of ownership and no suit pending. The primary purpose of the bill was not to declare the respective interests of the complainants in the property, but to compel Eatman, who was alleged to have claimed or purported to claim some right, title or interest in the land "to come into a court of equity and propound and show the nature, character, and kind of his title, claim, and demand, and to have it determined, and to have the court to decree and adjudge whether it is good or bad, and to what extent, and to what part of the land it is good or bad. It is not the object of the * * * bill to declare what title the complainant has, but what the respondent has; and if the respondent desires to test the sufficiency of complainant's title he must do it by a cross-bill." Stacey v. Jones, 180 Ala. 231, 236, 60 So. 823, 824. We therefore do not think the inexpertly transacted action of *quia timet* stands in the way of the conclusion of the lower court that Naomi, by virtue of her deed in 1932 from Eatman, was vested with the outstanding title to the property. As stated, whether or not Floyd or Naomi owned the lands, one or both, was not an issue in that case. And from aught appearing the decree did not purport to fix the interests or titles of the respective complainants in the various tracts of land or to divest out of either the outstanding title which either then held.

We conclude, therefore, that the court committed no error in finding that Naomi was the sole owner of the realty involved in the executions and in restraining a sale thereof to satisfy Floyd's judgment. Of consequence that phase of the decree is affirmed.

Affirmed in part and in part reversed and rendered.

Let all costs be divided and assessed equally between the appellant and appellees.

LIVINGSTON, C. J., and STAKELY and CLAYTON, JJ., concur.

On Application for Rehearing

SIMPSON, Justice.

It is argued by appellees that the alleged setoff sought to be asserted was equitable as contradistinguished from a legal one and that the authorities cited in support of our conclusion on original deliverance are inapplicable. Rather than respond to that contention, we prefer to further illustrate the futility of appellees' case by mentioning another defense which was interposed. We indicated supra that there were other defenses which might be mentioned. One in particular impresses us as unquestionably putting the appellees' case out of court. That is prescription.

■ The bill sought an accounting and to rest the setoff on an item (the balance due appellees by the mortgage foreclosure sale) carried in the account. The last entry in the account was made more than twenty years prior to the filing of the bill and thereafter there was never any admission or recognition on the part of the respondent of any right in the appellees or obligation on his part with respect to the matter. Unquestionably prescription bars the instant suit.

■ The rule has been variously stated in our cases. One of the better statements which has come under our view in the study of this case is found in Snodgrass v. Snodgrass, 176 Ala. 276, 280–281, 58 So. 201, as follows:

"As a matter of public policy, and for the repose of society, it has long been the settled policy of this state, as of others, that antiquated demands will not be considered by the courts, and that, without regard to any statute of limitations, there must be a time beyond which human transactions will

248

not be inquired into. It is settled that, after a period of 20 years, without any payment, settlement, or other recognition of liability, mortgages and liens will be presumed to have been paid, settlements will be presumed to have been made by administrators, trustees, agents, and other persons occupying fiduciary positions. It is necessary for the peace and security of society that there should be an end of litigation, and it is inequitable to allow those who have slept upon their rights for a period of 20 years, after they might have demanded an accounting, and after, as is generally the case, the memory of transactions has faded and parties and witnesses passed away, to demand an accounting. The concensus of opinion in the present day is that such presumption is conclusive, and the period of 20 years, without some distinct act in recognition of the trust, a complete bar; and, as said in an early case, 'the presumption rests not only on the want of diligence in asserting rights, but on the higher ground that it is necessary to suppress frauds, to avoid long dormant claims, which, it has been said, have often more of cruelty than of justice in them, that it conduces to peace of society and the happiness of families, "and relieves courts from the necessity of adjudicating rights so obscured by the lapse of time and the accidents of life that the attainment of truth and justice is next to impossible." ' "

See also Harrison v. Heflin, 54 Ala. 552; Coyle v. Wilkins, 57 Ala. 108; Greenlees v. Greenlees, 62 Ala. 330; Garrett v. Garrett, 69 Ala. 429; Long v. Parmer, 81 Ala. 384, 1 So. 900; Bozeman v. Bozeman, 82 Ala. 389, 2 So. 732; Wilkerson v. Wilkerson, 230 Ala. 567, 161 So. 820; Case v. Conservation & Land Co., 256 Ala. 46, 53 So.2d 562.

In order to avert the application of the doctrine appellees contend that the rule of repose rests on the failure of the claimant to *assert* rights adverse to his opponent during the prescriptive period and that therefore the effort on their part to plead the setoff in the case of Eatman v. Goodson, 36 Ala.App. 360, 58 So.2d 129, certiorari denied, 257 Ala. 239, 58 So.2d 133, in the proceeding of scire facias to revive the judgments in 1952 had the effect of tolling the prescriptive period even though the setoff in that proceeding was denied. This is not the law. There are intimations in our cases to the effect that the principle of prescription is affected by whether or not the claimant allows twenty years to elapse without taking any steps to *compel* a settlement or *assert* the right. Such cases are Moss v. Davitt, 255 Ala. 513, 52 So.2d 515; Jellerson v. Pettus, 132 Ala. 671, 32 So. 663; Black v. Pratt Coal & Coke Co., 85 Ala. 504, 5 So. 89; Oxford v. Estes, 229 Ala. 606, 611, 158 So. 534; Bonner v. Young, 68 Ala. 35; Goodwyn v. Baldwin, 59 Ala. 127; Rhodes v. Turner, 21 Ala. 210; Heflin v. Heflin, 208 Ala. 69, 93 So. 719. See also Wise v. Helms, 252 Ala. 227, 40 So.2d 700, holding that lack of notice would prevent the running of the prescriptive period, which holding was repudiated in Merrill v. Merrill, 260 Ala. 408, 71 So.2d 44. Many of the last cited cases were dealing with laches where, of course, lack of notice and rights unasserted enter into a consideration of that principle.

In prescription, however, the mere assertion of a claim does not stop the running of the period. In order to do so, a right asserted during the twenty years must have eventuated successfully. For analogy see Staten v. Shumate, 243 Ala. 261, 9 So.2d 751.

As was pointed out in Snodgrass v. Snodgrass, supra, quoting from Harrison v. Heflin, 54 Ala. 552, 563–564, the conclusive presumption of payment or satisfaction " 'rests not only on the want of diligence in asserting rights, but on the higher ground that it is necessary to suppress frauds, to avoid long dormant claims, which, it has been said, have often more of cruelty than of justice in them * * *.' "

As was stated in Hendley v. First Nat. Bank of Huntsville, 234 Ala. 535, 537, 176 So. 348, 349, Id., 235 Ala. 664, 180 So. 667, "The basic principle of prescription is not the mere lapse of time, but the lapse of

time within which no recognition of a subsisting and continuing right or obligation appears."

It results, therefore, that the claimed set-off was barred by prescription at the time of the institution of the present litigation.

Opinion extended and application for rehearing overruled.

LIVINGSTON, C. J., and STAKELY and GOODWYN, JJ., concur.