STUART, Justice.
 

 Joe Harrison, as executor of the estate of Wyatt Harrison, deceased, sued the Alabama Forever Wild Land Trust (“the Trust Fund”) and others
 
 [1]
 
 pursuant to § 6-6-540, Ala.Code 1975, seeking to quiet title to an uninhabited 160-acre parcel of land in Colbert County (“the property”) claimed by both the Harrison family and the Trust Fund.
 
 [2]
 
 The trial court entered a summary judgment quieting title to the property in favor of the Trust Fund, and Harrison now appeals. We affirm.
 

 I.
 

 The property was originally granted to Greenberry Williams, Sr., by the United States government in 1848. At that time, the property was located in Franklin County; however, the property was located in that part of Franklin County that became Colbert County when the legislature created Colbert County in 1870.
 

 In 1856, Greenberry Williams, Sr., conveyed the property to his son, Ausker Williams, by deed. Thereafter, there is a break in the chain of title because the
 
 *1116
 
 Franklin County courthouse was destroyed by fire in 1890.
 
 [3]
 
 The next instrument involving the property was not recorded until 1907, when a deed was recorded in Colbert County by which Greenberry Williams, Jr. — son of Greenberry Williams, Sr., and brother to Ausker Williams — purported to convey the property to J.T. Crotts and P.B. Worley. The property thereafter was owned by various individuals and timber companies, with each conveyance recorded in Colbert County, before the land was ultimately purchased by the Trust Fund in 2002. Since that time the property has been managed by the Alabama Department of Conservation and Natural Resources.
 

 Joe Harrison lays claim to the property via the chain of title involving Ausker Williams. Harrison, a descendant of Greenberry Williams, Jr., disputes the validity of the 1907 deed purportedly executed by his great-great-grandfather and argues that the property was instead passed down through the Ausker Williams family pursuant to the 1856 deed by which Green-berry Williams, Si-., conveyed the property to Ausker Williams. In 1953, that 1856 deed was refiled in Colbert County by Mary Waddell Harrison — the granddaughter of Greenberry Williams, Jr., and the grandmother of Joe Harrison. Subsequently, between 1985 and 1987, the living descendants of Ausker Williams, all of whom appear to have left Alabama, executed quitclaim deeds conveying their respective interests in the property to Mary Waddell Harrison. Mary Waddell Harrison then devised the property to her son Wyatt Harrison — the deceased father of Joe Harrison — when she died in 1990.
 

 On December 23, 2005, Harrison filed a complaint in the Colbert Circuit Court seeking to quiet title to the property. The Trust Fund answered the complaint, and both Harrison and the Trust Fund thereafter filed summary-judgment motions asking the trial court to quiet title to the property in their favor. The trial court initially denied both motions; however, after conducting additional discovery, the parties filed renewed motions for summary judgment and, on January 14, 2008, the trial court entered a summary judgment in favor of the Trust Fund without specifying the grounds for its ruling. On February 22, 2008, Harrison filed his notice of appeal to this Court.
 

 II.
 

 “This Court’s review of a summary judgment is de novo. Williams
 
 v. State Farm Mut. Auto. Ins. Co.,
 
 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.;
 
 Blue Cross & Blue Shield of Alabama v. Hodurski,
 
 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant.
 
 Wilson v. Brown,
 
 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact.
 
 Bass v. SouthTrust Bank of Baldwin County,
 
 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12.”
 

 
 *1117
 

 Dow v. Alabama Democratic Party,
 
 897 So.2d 1035, 1038-39 (Ala.2004).
 

 III.
 

 Section 6-6-540, Ala.Code 1975, provides:
 

 “When any person is in peaceable possession of lands, whether actual or constructive, claiming to own the same, in his own right or as personal representative or guardian, and his title thereto, or any part thereof, is denied or disputed or any other person claims or is reputed to own the same, any part thereof, or any interest therein or to hold any lien or encumbrance thereon and no action is pending to enforce or test the validity of such title, claim, or encumbrance, such person or his personal representative or guardian, so in possession, may commence an action to settle the title to such lands and to clear up all doubts or disputes concerning the same.”
 

 Pursuant to this statute, Harrison argues that he presented substantial evidence indicating that he and his family were in peaceable possession of the property and that any evidence the Trust Fund presented to the contrary merely created a genuine issue of material fact for the fact-finder to decide. See, e.g.,
 
 Adams v. Bethany Church,
 
 380 So.2d 788, 791 (Ala.1980) (“What constitutes peaceable possession will vary as it is a determination based on the facts in each case.” (citing
 
 Williams v. Romano,
 
 289 Ala. 190, 266 So.2d 750 (1972))). The Trust Fund, however, argues that the undisputed facts establish that the Harrison family was
 
 ‘not
 
 in peaceable possession of the property; rather, it was the Trust Fund that was in peaceable possession of the property at the time this action was filed. Additionally, the Trust Fund argues that Harrison’s action is barred by the rule of repose. We agree that the rule of repose bars Harrison’s action.
 

 In
 
 Boshell v. Keith,
 
 418 So.2d 89, 91-92 (Ala.1982), this Court summarized the rule of repose as follows:
 

 “Since
 
 McArthur v. Carrie’s Admr.,
 
 32 Ala. 75 (1858), this State has followed a rule of repose, or rule of prescription, of 20 years. This principle of repose or prescription is similar to a statute of limitations, but not dependent upon one, and broader in scope.
 
 Scott v. Scott,
 
 202 Ala. 244, 80 So. 82 (1918);
 
 Patterson v. Weaver,
 
 216 Ala. 686, 114 So. 301 (1927). It is a doctrine that operates in addition to laches. Unlike laches, however, the only element of the rule of repose is time. It is not affected by the circumstances of the situation, by personal disabilities, or by whether prejudice has resulted or evidence obscured.
 
 Wilkerson v. Wilkerson,
 
 230 Ala. 567, 161 So. 820 (1935); 30A C.J.S.,
 
 Equity
 
 § 113 (1965), at p. 33. It operates as an absolute bar to claims that are unasserted for 20 years.
 
 Roach v. Cox,
 
 160 Ala. 425, 49 So. 578 (1909). The rationale for this absolute bar to such actions was set forth in
 
 Snodgrass v. Snodgrass,
 
 176 Ala. 276, 58 So. 201 (1912), as follows:
 

 “ ‘As a matter of public policy, and for the repose of society, it has long been the settled policy of this state, as of others, that antiquated demands will not be considered by the courts, and that, without regard to any statute of limitations, there must be a time beyond which human transactions will not be inquired into. It is settled that, after a period of 20 years, without any payment, settlement, or other recognition of liability, mortgages and liens will be presumed to have been paid, settlements will be presumed to have been made by administrators, trustees, agents, and other persons occupying fiduciary positions. It is necessary for the peace and security of society that there should be an
 
 *1118
 
 end of litigation, and it is inequitable to allow those who have slept upon their rights for a period of 20 years, after they might have demanded an accounting, and after, as is generally the case, the memory of transactions has faded and parties and witnesses passed away, to demand an accounting. The consensus of opinion in the present day is that such presumption is conclusive, and the period of 20 years, without some distinct act in recognition of the trust, a complete bar; and, as said in an early case, “the presumption rests not only on the want of diligence in asserting rights, but on the higher ground that it is necessary to suppress frauds, to avoid long dormant claims, which, it has been said, have often more of cruelty than of justice in them, that it conduces to peace of society and the happiness of families, ‘and relieves courts from the necessity of adjudicating rights so obscured by the lapse of time and the accidents of life that the attainment of truth and justice is next to impossible.’
 
 ”
 
 — Harrison
 
 et al. v. Heflin, Adm’r, et al.,
 
 54 Ala. 552, 563, 564[ (1875) ];
 
 Greenlees’ Adm’r v. Greenlees et al., 62 Ala. 330
 
 [ (1878) ];
 
 Nettles v. Nettles,
 
 67 Ala. 599, 602 [ (1880) ];
 
 Garrett v. Garrett,
 
 69 Ala. 429, 480 [(1881)];
 
 Semple v. Glenn,
 
 91 Ala. 245, 260, 6 South. 46, 9 South. 265, 24 Am. St. Rep. 929 [(1891)];
 
 Roach v. Cox,
 
 160 Ala. 425, 427, 49 South. 578, 135 Am. St. Rep. 107 [(1909) ].’
 

 “Snodgrass,
 
 at 176 Ala. 280, 281, 58 So. 201.”
 

 (Emphasis omitted.)
 

 The Trust Fund claims ownership of the property by way of the 1907 deed whereby Greenberry Williams, Jr., transferred the property to Crotts and Worley. That deed was properly recorded in Colbert County, and Harrison’s ancestors were accordingly on notice as of that date that another party claimed an interest in the property. See § 35-4-63, Ala.Code 1975 (“The recording in the proper office of any conveyance of property or other instrument which may be legally admitted to record operates as a notice of the contents of such conveyance or instrument without any acknowledgment or probate thereof as required by law.”).
 
 [4]
 
 Nevertheless, none of those ancestors took any steps to contest the 1907 deed. Rather, it was not until 2005 — 98 years after the 1907 deed was recorded— that Harrison initiated the present action to quiet title to the property. During those 98 years in which Harrison and his ancestors “slept upon their rights” and took no action to quiet title to the property, “the memory of transactions ... faded and parties and witnesses passed away.”
 
 Boshell,
 
 418 So.2d at 91 (emphasis omitted). Indeed, Harrison has raised the possibility that the 1907 deed was a forgery; however, the parties that might have personal knowledge of the circumstances surrounding the execution and filing of that deed have almost certainly all passed away. These are precisely the facts for which the rule of repose was fashioned, and that rule accordingly serves as an absolute bar to Harrison’s action.
 

 Nevertheless, Harrison argues that the rule of repose should not apply to his case for two reasons. First, Harrison argues that the Trust Fund waived its right to rely on the rule of repose because it failed to assert the rule as an affirmative
 
 *1119
 
 defense in its initial answer to the complaint and because the trial court thereafter never explicitly granted the Trust Fund leave to file its amended answer, in which it asserted the rule of repose as a defense. See
 
 Ex parte Liberty Nat’l Life Ins. Co.,
 
 858 So.2d 950, 958 (Ala.2003) (“Typically, if a party fails to plead an affirmative defense, that defense is deemed to have been waived. However, there are exceptions to this rule, one of which is that an affirmative defense can be revived if a party is allowed to amend his pleading to add the defense.” (citations omitted)). The Trust Fund responds by arguing, first, that Harrison has impermis-sibly raised this argument for the first time in his reply brief on appeal and, second, that the trial court in fact implicitly granted the Trust Fund leave to file its amended answer by affirmatively denying Harrison’s motion to strike the amended answer. Setting aside the issue whether Harrison’s argument on this point is timely, we agree that the trial court implicitly granted the Trust Fund leave to amend its answer to include the rule-of-repose defense.
 

 On January 12, 2007, the trial court entered a scheduling order setting the trial date for March 26, 2007, and stating that “no causes of action, defenses, or parties may be added after forty-two (42) days before trial.” Subsequently, but without first seeking leave from the trial court, the Trust Fund filed an amended answer asserting the rule of repose as a defense. That amended answer was filed on February 2, 2007 — 52 days before trial and thus within the deadline set by the trial court. On May 21, 2007, Harrison moved to strike the Trust Fund’s amended answer and, on August 7, 2007, the trial court affirmatively denied that motion. By denying Harrison’s motion to strike, the trial court effectively held that the amended answer was properly before the court and part of the record, even though it did not explicitly issue an order so stating. See
 
 Hilb, Rogal & Hamilton Co. v. Beiersdoerfer,
 
 989 So.2d 1045, 1056 n. 2 (Ala.2007) (“Although this Court’s opinion in
 
 [Beiersdoerfer v. Hilb, Rogal & Hamilton Co.,
 
 958 So.2d 1196 (Ala.2006),] stated that the trial court denied the [appellants’] postjudgment motion for a JML, upon further review of the orders of the trial court entered in 2002, we do not find any order explicitly denying a motion for a JML after the jury returned its verdict. Nevertheless, we conclude that the trial court implicitly denied the postverdict motion for a JML when it granted the [appellants’] motion for a new trial. The order granting a new trial is inconsistent with the view that the motion for a JML was meritorious.”). The rule of repose was thus properly asserted, and the Trust Fund is not procedurally barred from relying on it.
 

 Harrison next argues that the rule of repose should not operate to bar his action because, he says, this Court has recognized an exception to the rule of repose when the party asserting that defense has expressly recognized the opposing party’s claimed right. See, e.g.,
 
 Boshell,
 
 418 So.2d at 92 (stating that “[t]he only circumstance that will stay the running of the 20-year period of repose is a recognition of the existence of the claimant’s right by the party defending against the claim”). Harrison argues that the Trust Fund, a State entity, cannot dispute that it knew of his family’s claim to the property, inasmuch as his family has continually remitted ad valo-rem taxes on the property to the State since the 1950s. Therefore, Harrison argues, the Trust Fund should be barred from asserting the rule of repose because, he says, the State was aware of his family’s claim to the property. The Trust Fund responds by arguing that Harrison is confusing notice of a “claim” with recogni
 
 *1120
 
 tion of a “right.” We agree. In
 
 Eatman v. Goodson,
 
 262 Ala. 242, 248-49, 78 So.2d 625, 630-31 (1954), this Court clarified that distinction, stating:
 

 “In order to avert the application of the doctrine appellees contend that the rule of repose rests on the failure of the claimant to
 
 assert
 
 rights adverse to his opponent during the prescriptive period and that therefore the effort on then-part to plead the setoff in the case of
 
 Eatman v. Goodson,
 
 36 Ala.App. 360, 58 So.2d 129 [ (1951) ], certiorari denied, 257 Ala. 239, 58 So.2d 133 [ (1952) ], in the proceeding of scire facias to revive the judgments in 1952 had the effect of tolling the prescriptive period even though the setoff in that proceeding was denied. This is not the law. There are intimations in our cases to the effect that the principle of prescription is affected by whether or not the claimant allows twenty years to elapse without taking any steps to
 
 compel
 
 a settlement or
 
 assert
 
 the right.... Many of [these] cases were dealing with laches where, of course, lack of notice and rights unas-serted enter into a consideration of that principle.
 

 “In prescription, however, the mere assertion of a claim does not stop the running of the peri.od. In order to do so, a right asserted during the twenty years must have eventuated successfully.
 
 For analogy see
 
 Staten v. Shumate,
 
 243 Ala. 261, 9 So.2d 751 [ (1942) ].
 

 “As was pointed out in
 
 Snodgrass v. Snodgrass,
 
 [176 Ala. 276, 58 So. 201 (1912),] supra, quoting from
 
 Harrison v. Heflin,
 
 54 Ala. 552, 563-564 [(1875)], the conclusive presumption of payment or satisfaction ‘ “rests not only on the want of diligence in asserting rights, but on the higher ground that it is necessary to suppress frauds, to avoid long dormant claims, which, it has been said, have often more of cruelty than of justice in them ....”’
 

 “As was stated in
 
 Hendley v. First Nat. Bank of Huntsville,
 
 234 Ala. 535, 537, 176 So. 348, 349 [ (1937) ],
 
 Id.,
 
 235 Ala. 664, 180 So. 667, ‘[t]he basic principle of prescription is not the mere lapse of time, but the lapse of time within which no recognition of a subsisting and continuing right or obligation appears.’ ”
 

 (Final emphasis added.) Thus, the mere fact that the Trust Fund, and/or its predecessors in title, may have known that Harrison and his family laid claim to the property is insufficient to stay the running of the 20-year period. Indeed, the Trust Fund acknowledges that its predecessors in title became aware of Mary Waddell Harrison’s claim to the property around 1953 at the latest, after she refiled the 1856 deed. However, rather than recognize her claimed rights to the property, the Trust Fund’s predecessor in title filed affidavits
 
 contesting
 
 Mary Waddell Harrison’s claim to the property. There is no evidence in the record indicating that the Trust Fund or its predecessors have ever recognized Harrison’s and his family’s claim to the property as legitimate or enforceable; to the contrary, the evidence indicates they have always claimed exclusive ownership of the property for themselves.
 
 [5]
 
 The cited exception to the rule of
 
 *1121
 
 repose accordingly does not apply, and that rule now bars Harrison’s claim.
 

 IV.
 

 In 1907, the Trust Fund’s predecessors in title, Crotts and Worley, formally recorded a deed whereby they took ownership of the property. Possession of the property subsequently changed hands several times — with each new deed also being recorded — until the Trust Fund obtained the property in 2002. Harrison claims that he and his family were the rightful owners of the property throughout this period, but it was not until he filed the instant action in 2005 that any member of the family formally challenged the claim of the Trust Fund or its predecessors in title to the property. However, because they failed to assert their rights during the preceding 98 years, those rights have been lost, and the rule of repose bars Harrison’s quiet-title action. The summary judgment entered by the trial court quieting title to the property in favor of the Trust Fund was therefore proper and is hereby affirmed.
 

 AFFIRMED.
 

 COBB, C.J., and LYONS, BOLIN, and MURDOCK, JJ., concur.
 

 [1]
 

 . The other named defendants included the property at issue; "all other persons claiming any present, future, contingent, remainder, reversion or other interest in said land”; and the tax revenue commissioner of Colbert County, Bill Thompson. According to the Trust Fund’s appellate brief, the revenue commissioner has never appeared in this action and has never filed a claim to the property.
 

 [2]
 

 . The Trust Fund was established by Amendment No. 543 to the Alabama Constitution of 1901, ratified on February 2, 1993, “for the purpose of identifying, acquiring, managing, protecting and preserving natural lands and waters that are of environmental or recreational importance.” Art. XI, § 219.07, Ala. Const. 1901 (Off.Recomp.).
 

 [3]
 

 . The family kept a copy of the 1856 deed; thus, that record exists even though most other pre-1890 records were destroyed in the fire.
 

 [4]
 

 . We note, however, that “[l]ack of notice is not sufficient to avert the application of the doctrine [of repose].”
 
 Ballenger v. Liberty Nat’l Life Ins. Co.,
 
 271 Ala. 318, 322, 123 So.2d 166, 169 (1960).
 

 [5]
 

 . The fact that Harrison's family paid, and the State accepted, property taxes is not tantamount to a recognition of their right to the property. Tax records submitted by the Trust Fund show that the Trust Fund's predecessors in title (the Trust Fund is exempt from paying property taxes) paid property taxes on the property both before and after Harrison’s family began paying a redundant assessment in the 1950s. To accept Harrison's argument would require us to hold that the State simultaneously recognized ownership of the property by both Harrison’s family and the Trust Fund's predecessors in title — an impossibility.
 

 
 *1121
 
 Moreover, even if we did agree that the State, and therefore the Trust Fund, recognized Harrison’s family's right to the property by accepting their payment of properly taxes, Harrison has not claimed that the Trust Fund’s predecessors in title also recognized his family's right to the property so as to toll the 20-year prescriptive period that began to run in 1907 and thus presumably ran in 1927.